2020 PA Super 22

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| HUGO SELENSKI | : | |
| | : | |
| Appellant | : | No. 1062 EDA 2019 |

Appeal from the PCRA Order Entered March 13, 2019
In the Court of Common Pleas of Monroe County Criminal Division at
No(s):  CP-45-CR-0001225-2006

BEFORE:   BOWES, J., OLSON, J., and STEVENS, P.J.E.[*]

OPINION BY STEVENS, P.J.E.:                **FILED FEBRUARY 04, 2020**

Appellant, Hugo Selenski, appeals from the March 13, 2019, order entered in the Court of Common Pleas of Monroe County, which denied his first petition filed under the Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546, following an evidentiary hearing.  After a careful review, we affirm.

This Court has previously set forth, in part, the relevant facts and procedural history as follows:

> On July 10, 2009, a jury convicted Appellant of multiple offenses, including kidnapping, robbery, attempted burglary, criminal conspiracy, theft by unlawful taking, simple assault, false imprisonment, and terroristic threats—all with respect to a home invasion and attack on a jeweler named Samuel Goosay.  The trial court recounted the facts adduced at trial as follows:

---

[*] Former Justice specially assigned to the Superior Court.

On January 27, 2003, two men broke into Mr. Goosay's residence just after dinner wearing ski masks and brandishing a gun. The men handcuffed Mr. Goosay and placed duct tape over his eyes while threatening him and questioning him about the alarm code to his jewelry store and $20,000 in cash. Mr. Goosay gave the men a partial code and one of them went, in Mr. Goosay's car, to the jewelry store where he attempted and failed to break in and disarm the alarm. During this time, the other man stayed with Mr. Goosay. At some point during the altercation, the metal handcuffs initially used to bind Mr. Goosay's hands were switched to plastic flex cuffs.

Mr. Goosay was seated on the bed while the man who had stayed behind ransacked the master bedroom. At this time, Mr. Goosay was able to push the duct tape over one eye and see that his assailant had left the gun on top of a nearby dresser. Mr. Goosay grabbed the gun and a fight ensued where the assailant overtook Mr. Goosay, obtained the gun, and sat Mr. Goosay back on the bed to put a flex cuff around his ankles. While the assailant was putting the flex cuff on his ankles, Mr. Goosay saw the assailant's face without the ski mask.[1] The assailant commented that it did not matter that Mr. Goosay saw his face because the assailant was not "from around here" and that Mr. Goosay would "never recognize [him]" and will "never know who [he] is."

Shortly thereafter, the alarm company at Mr. Goosay's jewelry store called his home phone and indicated that police were being dispatched to the store because the alarm had been triggered. Upon receiving this information, the assailant hit Mr. Goosay in the head and quickly left. Mr. Goosay removed some of his restraints and telephoned the police. The police collected the flex cuffs and duct tape from inside Mr. Goosay's house as well as

---

[1] At trial, Mr. Goosay positively identified Appellant as the person he saw without the ski mask. N.T., 7/8/09, at 30-31. He also positively identified Appellant as the man who remained at the Goosay house while the other man, later identified as Paul Weakley, went to the jewelry store. *Id.*

pictures of footprints in the snow outside of Mr. Goosay's home. Among the footprints was one from a New Balance sneaker.

During the time this case was being investigated, police located human remains on [Appellant's] property in Luzerne County. Two bodies, those of Michael Kerkowski, Jr., and Tammy Fasset, were found buried behind [Appellant's] residence. Police determined that Kerkowski was a small business owner and Fasset was his girlfriend. Both victims were bound with flex cuffs: Fasset was bound around her hands, ankles, and neck and Kerkowski was bound around his hands. Additionally, Kerkowski had duct tape over his eyes. Upon searching [Appellant's] garage, home, and the vehicle he used, police located flex cuffs, duct tape, ski masks, metal handcuffs, a black BB pistol, and New Balance sneakers.

The flex cuffs on [Appellant's] property and those used to bind Mr. Goosay were found to be from a common source. The New Balance sneakers that were found in [Appellant's] garage were identified by [Appellant's] ex-girlfriend, [Christina] Strom, as belonging to [Appellant]. Moreover, an expert in the field of footwear impressions concluded that the prints left outside Mr. Goosay's home could have been left by [Appellant's] sneakers because "the physical size, the general state of wear, and the lack of accidental characteristics" on [Appellant's] sneakers matched the same on the impression in the snow.

During the trial, both the Commonwealth and [Appellant] presented evidence regarding Mr. Goosay's pretrial identifications of [Appellant]. Six months after the incident, Corporal Shawn Noonan showed Mr. Goosay a photo array that contained a picture of [Appellant] from 2001. Mr. Goosay failed to identify [Appellant] in this first array. Approximately two years later, Agent Scott Endy showed Mr. Goosay another photo array containing a picture of [Appellant] from May of 2003. Mr. Goosay was able to identify [Appellant]. Mr. Goosay was also able to identify [Appellant] at trial.

Trial Court Opinion, 3/4/16, at 2–4 (citations to notes of testimony and footnotes omitted).

Prior to trial, Appellant sought to contest Mr. Goosay's identification of him as the perpetrator by presenting an expert witness on eyewitness identification and on factors that can lead to inaccurate identification. Because Pennsylvania law at that time precluded such testimony, the trial court declined to permit this evidence. After three days of trial, a jury convicted Appellant of the aforestated charges, and on September 21, 2009, the trial court sentenced Appellant to an aggregate 32½ to 65 years' incarceration.

Appellant filed a direct appeal in which he challenged the trial court's exclusion of the expert testimony on eyewitness identification, and this Court affirmed his judgment of sentence. *Commonwealth v. Selenski*, 18 A.3d 1229 (Pa.Super. 2011). Appellant then petitioned for allowance of an appeal to the Supreme Court. During the pendency of his petition, on May 28, 2014, the Supreme Court rendered its decision in [*Commonwealth v.*] *Walker*, [625 Pa. 450, 92 A.3d 766 (2014)], which reversed the longstanding ban on expert eyewitness identification testimony. The Supreme Court subsequently granted Appellant's petition and remanded his case to this Court. *Commonwealth v. Selenski*, 627 Pa. 352, 100 A.3d 206 (2014). The Supreme Court's *per curiam* order stated:

> **AND NOW,** this 29th day of August, 2014, the Petition for Allowance of Appeal is **GRANTED, LIMITED TO** Petitioner's first issue, as stated by Petitioner:
>
> Does the constitutional right to present a defense include the right to offer proven science bearing on the understanding of human memory and perception, and police practices in the identification process, where those advances are unknown to laypersons?
>
> Further, the Superior Court's order affirming the judgment of sentence is **VACATED,** and the matter is **REMANDED** to the Superior Court for further consideration in light of *Commonwealth v. Walker*, 625 Pa. 450, 92 A.3d 766 (2014). In all other respects, the Petition for Allowance of Appeal is **DENIED.**

*Selenski*, 100 A.3d at 206.

***Commonwealth v. Selenski***, 158 A.3d 102, 103-05 (Pa.Super. 2017) (footnote omitted) (footnote added).

Upon receipt of the Supreme Court's order, this Court remanded the case to the trial court "so that it [could] perform its traditional gatekeeping function with regard to the proposed expert testimony." ***Commonwealth v. Selenski***, 117 A.3d 1283, 1285 (Pa.Super. 2015). That is, we determined the trial court should determine the applicability of ***Walker*** in the first instance.

Upon remand, Appellant moved to present the expert testimony of Dr. Jennifer Dysart, who proposed to detail "13 factors that can be relevant to eyewitness identifications" and to opine, "after reviewing partial records from this case and [Appellant's] case in Luz[e]rne County, [that] 9 of these 13 factors apply in [Appellant's] case." ***Selenski***, 158 A.3d at 105. The trial court concluded Appellant's motion was a request for a new trial based on the admission of expert testimony, which was not allowed at his first trial. ***Id.***

Following an evidentiary hearing, the trial court ruled the expert testimony of Dr. Dysart was inadmissible under ***Walker***. Accordingly, the trial court denied Appellant's request for a new trial at which he could introduce the expert evidence. Appellant filed a timely appeal contending the trial court erred in denying Appellant's request for a new trial so that he could present the testimony of Dr. Dysart.

After a careful review, on March 16, 2017, we found no error, and consequently, we affirmed Appellant's judgment of sentence. **See Selenski**, 158 A.3d at 117. Appellant filed a petition for allowance of appeal, which our Supreme Court denied on September 19, 2017. Appellant did not file a petition for a writ of *certiorari* with the United States Supreme Court.

On March 5, 2018, Appellant filed a timely first PCRA petition, and the next day, counsel was appointed to assist Appellant. On July 23, 2018, counsel filed an amended PCRA petition, and on October 19, 2018, the PCRA court held an evidentiary hearing at which the sole testifying witness was Appellant's trial counsel. Thereafter, at the direction of the PCRA court, Appellant and the Commonwealth filed briefs, and by order and opinion filed on March 13, 2019, the PCRA court denied Appellant's PCRA petition. This timely appeal followed. All Pa.R.A.P. 1925 requirements have been met.

On appeal, Appellant sets forth the following issues in his "Statement of the Questions Presented":

A. Whether the PCRA court erred and abused its discretion by not finding that [Appellant's] trial counsel was ineffective for failing to appropriately cross-examine witnesses, failing to call all necessary witnesses, failing to file necessary and appropriate pretrial motions, fail[ing] to make necessary objections during trial, and failing to present necessary evidence, including DNA related-evidence?

B. Whether the PCRA court erred and abused its discretion by not finding that the failure of the Commonwealth to turn over discoverable evidence prior to trail [*sic*], even where such evidence was from another jurisdiction within the Commonwealth, was a violation of [Appellant's] rights such that he is entitled to [a] new trial?

Appellant's Brief at 4 (suggested answers omitted).

Initially, we note:

> This Court analyzes PCRA appeals in the light most favorable to the prevailing party at the PCRA level. Our review is limited to the findings of the PCRA court and the evidence of record and we do not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error. Similarly, we grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions. Where the petitioner raises questions of law, our standard of review is *de novo* and our scope of review is plenary. Finally, we may affirm a PCRA court's decision on any grounds if the record supports it.

***Commonwealth v. Benner***, 147 A.3d 915, 919 (Pa.Super. 2016) (quoting

***Commonwealth v. Perry***, 128 A.3d 1285, 1289 (Pa.Super. 2015)).

In his first issue, Appellant presents various claims of ineffective assistance of trial counsel.[2] Namely, Appellant contends trial counsel was ineffective in (1) failing to call Paul Weakley as a witness at trial, (2) failing to call a DNA expert to testify at trial, (3) failing to call witnesses to rebut Mr. Goosay's testimony regarding Appellant's smoking a cigarette during the

---

[2] It is noteworthy that, at trial, Appellant did not dispute that the crimes against Mr. Goosay occurred; but rather, his defense was that he did not commit or participate in the crimes in any manner. Accordingly, ultimately, his ineffectiveness claims relate to trial counsel's failure to convince the jury that he was not one of the perpetrators.

home invasion, and (4) failing to object or cross-examine witnesses regarding the introduction of Paul Weakley's telephone records.[3]

In addressing Appellant's claims, we apply the following well-established legal principles:

> As originally established by the United States Supreme Court in **Strickland v. Washington**, 466 U.S. 668, [ ] (1984), and adopted by Pennsylvania appellate courts, counsel is presumed to have provided effective representation unless a PCRA petitioner pleads and proves all of the following: (1) the underlying legal claim is of arguable merit; (2) counsel's action or inaction lacked any objectively reasonable basis designed to effectuate his client's interest; and (3) prejudice, to the effect that there was a reasonable probability of a different outcome at trial if not for counsel's error.

**Commonwealth v. Wantz**, 84 A.3d 324, 331 (Pa.Super. 2014) (citations omitted). "A failure to satisfy any prong of the ineffectiveness test requires rejection of the claim of ineffectiveness." **Commonwealth v. Daniels**, 600 Pa. 1, 963 A.2d 409, 419 (2009).

> Generally, counsel's assistance is deemed constitutionally effective if he chose a particular course of conduct that had some reasonable basis designed to effectuate his client's interests. Where matters of strategy and tactics are concerned, a finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued. To demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. [A] reasonable probability is a probability that is

---

[3] Although Appellant framed his first issue broadly in his "Statement of the Questions Presented," we have narrowed his claims based on the argument presented in his brief.

sufficient to undermine confidence in the outcome of the proceeding.

*Commonwealth v. Spotz*, 624 Pa. 4, 84 A.3d 294, 311-12 (2014) (citations, quotation marks, and quotations omitted).

When raising a claim of ineffectiveness for the failure to call a potential witness, a petitioner satisfies the performance and prejudice requirements of the [ineffective assistance of counsel] test by establishing that: (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

*Commonwealth v. Sneed*, 616 Pa. 1, 45 A.3d 1096, 1108-09 (2012) (citations omitted).

Prejudice in this respect requires the petitioner to "show how the uncalled witnesses' testimony would have been beneficial under the circumstances of the case." Therefore, the petitioner's burden is to show that testimony provided by the uncalled witnesses "would have been helpful to the defense."

*Commonwealth v. Williams*, 636 Pa. 105, 141 A.3d 440, 460 (2016) (quotations and citation omitted).

Appellant initially contends trial counsel was ineffective in failing to call his co-conspirator, Paul Weakley,[4] as a witness at trial. Specifically, Appellant contends the following:

[Mr.] Weakley indicated [in an August 27, 2003, police statement] that both he and [Appellant] had gone into the house

_____

[4] Paul Weakley pled guilty to various offenses in connection with the incident involving Mr. Goosay, as well as the homicides in Luzerne County. *See* N.T. 7/8/09, at 15-16.

and also that two other individuals, Nick and Steve, had been present but had not participated. Neither Nick nor Steve were discussed or identified during the course of the trial by the Commonwealth, nor were they asked about by defense counsel.

The involvement of other people in the events which led to the instant charges raises the questions as to what [Appellant's] involvement may have been, as well as if [Appellant] indeed had even been present or gone into the Goosay house. Without [Mr.] Weakley to question, there was no ready way to bring in the information about these additional individuals.

[Mr.] Weakley had been identified as the individual who pawned the Goosay property in New York. The failure to subpoena [Mr.] Weakley meant that counsel could not question him regarding this incident and determine the extent to which he was involved. In that he had stolen on an earlier occasion, this increased the likelihood that his involvement was greater than he suggested and that he was using [Appellant] as a scapegoat to limit the scope of blame he needed to take on himself.

Appellant's Brief at 12-13.

Here, assuming, *arguendo*, Mr. Weakley existed, he was available to testify for the defense, and counsel knew, or should have known, of his existence, we agree with the PCRA court that Appellant failed to demonstrate Mr. Weakley was willing to testify for the defense. *See* PCRA Court Opinion, filed 3/13/19, at 8. Inasmuch as Mr. Weakley did not testify at Appellant's PCRA evidentiary hearing, Appellant did not offer an affidavit from Mr. Weakley indicating he would have been willing to testify for the defense, and Appellant has pointed to no other evidence establishing that Mr. Weakley would have been willing to testify for the defense, we agree with the PCRA court's conclusion. We further agree with the PCRA court that this is fatal to Appellant's claim of ineffective assistance of trial counsel. *See Sneed*, *supra*.

Moreover, we conclude the absence of Mr. Weakley's testimony at Appellant's trial as to the alleged involvement of two additional men named "Nick and Steve" was not so prejudicial as to have denied Appellant a fair trial. *See id.* Mr. Weakley identified Appellant as one of his co-conspirators. The fact there may have been additional co-conspirators, who Mr. Weakley could have identified at Appellant's trial, does not establish a reasonable probability that, but for counsel's action, there would have been a different outcome at Appellant's trial, particularly given the fact the victim, Mr. Goosay, positively identified Appellant at trial. Simply put, Appellant did not demonstrate how Mr. Weakley's testimony would have been helpful to his defense in this regard. *See Williams*, *supra*.

Appellant next contends trial counsel was ineffective in failing to call a DNA expert at trial. Specifically, Appellant avers that, although blood was found inside the Goosay house in the area where the struggle with Mr. Goosay occurred, DNA testing revealed the blood did not belong to Appellant. *See* Appellant's Brief at 13. Accordingly, Appellant contends a DNA expert would have explained that there was a "total lack of DNA evidence tying [Appellant] to the home invasion[,]" and the DNA evidence indicated some unknown person struggled with Mr. Goosay. *Id.* at 14.

In rejecting Appellant's claim, the PCRA court noted Appellant failed to identify a specific DNA expert who was either available or willing to testify for the defense. *See* PCRA Court Opinion, filed 3/13/19, at 8. We agree this is

- 11 -

fatal to Appellant's ineffective assistance of counsel claim.[5] **See Commonwealth v. Wayne**, 553 Pa. 614, 720 A.2d 456, 470-71 (1998) (holding a claim of ineffectiveness for failing to call an expert witness requires the petitioner to demonstrate an expert witness was available who would have offered testimony designed to advance the defense).

Appellant next contends trial counsel was ineffective in failing to call witnesses to rebut Mr. Goosay's testimony regarding the fact Appellant smoked a cigarette at the scene.

At trial, Mr. Goosay relevantly testified as follows on direct-examination by the prosecutor:

> **Q:** And when you were there with the two men, were they talking to you about anything else other than asking you questions about your store?
>
> **A:** Well, the one stayed with me. The one with the gun stayed with me. He talked a lot of small talk. He talked about the stock

---

[5] Moreover, we note trial counsel provided a reasonable basis for not calling a DNA expert to testify at Appellant's trial, and additionally, Appellant has failed to demonstrate that he was prejudiced by trial counsel's failure to call a DNA expert. Specifically, trial counsel testified the fact the DNA evidence collected from the Goosay residence excluded Appellant as a contributor was fully explored by trial counsel upon direct-examination of various defense witnesses, and he did not want the jury to get "bogged down into other DNA issues[.]" N.T., 10/19/18, at 12-13. Our review of the trial transcripts confirms trial counsel's assessment. **See** N.T.,7/9/09, at 79-82 (trial counsel examining Pennsylvania State Police Trooper Gerard Sachney regarding the fact the DNA evidence collected from the Goosay residence did not match Appellant's DNA); **Id.** at 88-108 (trial counsel examining Pennsylvania State Police Trooper Shawn Noonan regarding the fact the DNA evidence collected from the Goosay residence did not match Appellant's DNA). Accordingly, Appellant has failed to demonstrate either that trial counsel did not have a reasonable basis for his inaction or that Appellant was prejudiced. **See Spotz**, **supra**.

market. He talked about bonds. He talked about investing. He made a lot of small talk.

But, again, during the whole interim, especially when we were fighting, he kept threatening to kill me. "I'm going to kill you. If you don't cooperate, I'll kill you." He thought there was a lot of money. For whatever reason, he thought there was a lot of money in the house.

He kept—he was threatening that he would kill my wife when she got home. He was going to wait until she got home. If I didn't tell him where the money was, he was going to kill her, and then he'll find out where the money is.

**Q:** And were you responding to him when he was asking you questions and talking to you like about the stock market?

**A:** Yeah. We were just talking together. **As a matter of fact, I had a pack of cigarettes in my shirt pocket. At that time, I smoked, and I had a pack of cigarettes, and he asked me politely if he can take one of my cigarettes. I said, "As long as you let me have one."**

**So he grabbed an ashtray I had there, and he lit up a cigarette, and he lit mine for me. I smoked my cigarette. He smoked his. He at that point said, "I'm not stupid enough to leave this cigarette here." I think he flushed it down the toilet. I heard the toilet flush.**

N.T., 7/8/09, at 28-29 (emphasis added).

Appellant avers that it is well-known that he is not a smoker, and, thus, he could not have been the perpetrator described by Mr. Goosay. Accordingly, Appellant contends trial counsel should have called witnesses, who would have testified as to Appellant's non-smoking status.

Specifically, Appellant contends the following:

One of the more bizarre incidents described in [Mr.] Goosay's testimony was that, following the struggle for the gun, he and the perpetrator stopped, rested, and smoked cigarettes. While this event was odd enough on its face, it also offered a highly significant area in which [trial] counsel could have raised

significant questions. Specifically, [Appellant] is not a smoker, nor has he ever been. Numerous witnesses could have been procured to have known [Appellant] over the years to testify that he never in his life had been seen smoking a cigarette. This fact would have highly discredited the identification of [Appellant] by [Mr.] Goosay because a total non-smoker is very unlikely to light a cigarette for the first time in the middle of a stressful situation. This also might have brought doubt into the self-serving testimony of [Appellant's] ex-girlfriend who made several incredible statements, including that [Appellant] smoked on occasion.[6] By showing multiple witnesses to demonstrate that she was not being truthful regarding this feature, the remainder of her testimony would have just as likely been untrue. During the PCRA hearing, however, counsel acknowledged that he did not pursue this line of questioning.

Appellant's Brief at 14-15 (footnote added).

In rejecting Appellant's claim, the PCRA court noted Appellant failed to identify a specific witness trial counsel should have called who was either available or willing to testify for the defense as to Appellant's smoking habits. *See* PCRA Court Opinion, filed 3/13/19, at 8. Moreover, the PCRA court relevantly indicated the following:

[T]he trial transcripts demonstrate that trial counsel did[,] in fact[,] call witnesses who were able to testify about [Appellant's] smoking habits. Ruth Anne Pollard, [Appellant's] sister, was called by trial counsel and she testified that she had "never known [her] brother to smoke a cigarette." [N.T., Trial, 7/9/09, at 125]. Ronald Selenski, Jr., [Appellant's] brother, was also called by trial counsel for the same purpose and when asked if he knew if [Appellant] was a smoker, he replied, "no, not that I know of." [N.T., Trial, 7/9/09, at 129]….[Accordingly,] [a]ny additional testimony on this subject would [have been] cumulative

---

[6] Appellant's ex-girlfriend, Christina Strom, testified on cross-examination by trial counsel that Appellant was not "a smoker," but he had "a cigarette here and there." N.T., 7/8/09, at 152.

and [would have] provide[d] little additional benefit [to Appellant].

PCRA Court Opinion, filed 3/13/19, at 8.

We agree with the PCRA court's sound reasoning, and we conclude Appellant is not entitled to relief on this claim of ineffective assistance of trial counsel. *See Sneed*, *supra* (regarding requirements of establishing ineffectiveness for failing to call a witness); *Wantz*, *supra* (holding petitioner must demonstrate prejudice, *i.e.*, but for counsel's failure there is a reasonable probability of a different outcome at trial).

In his final claim of ineffective assistance of trial counsel, Appellant contends trial counsel was ineffective in failing to object or cross-examine witnesses regarding the introduction of Paul Weakley's telephone records. His entire argument in this regard is as follows:

> During the trial, phone records were produced to show phone activity. These records demonstrated several phone calls made by [Mr.] Weakley on the night of the home invasion to both [Appellant's] cell phone and also to [Appellant's] home number. There would be no reason for [Mr.] Weakley to be calling [Appellant] on a land line in Luzerne County if he knew him to be waiting at the Goosay home while he went to the [jewelry] store, and yet this line of questioning was left unaddressed by defense counsel at trial.
>
> ***
>
> The failure of defense counsel…to delve into the Weakley phone records, left significant unpresented questions, questions which would have likely turned the opinion of the jury. The failure to pursue these areas did not flow from any strategy or plan by defense counsel, but rather from ineffective representation.

Appellant's Brief at 15-16.

We find Appellant's claim to be waived. Appellant's undeveloped, bald assertion substantially hampers meaningful appellate review, and thus, we decline to address the issue further. *See Commonwealth v. Hall*, 582 Pa. 526, 872 A.2d 1177, 1182 (2005) (holding bald, undeveloped arguments fail to satisfy the appellant's burden of establishing ineffective assistance of trial counsel claim).

In his final issue, Appellant claims he is entitled to relief because the Commonwealth committed two *Brady*[7] violations.[8] Specifically, Appellant contends the Commonwealth failed to disclose "hair was identified in the trunk of [Mr.] Weakley's car which matched the DNA found in the Goosay residence and did not belong to [Appellant] or [Mr.] Weakley." Appellant's Brief at 17. Further, Appellant contends the Commonwealth failed to disclose that Appellant's ex-girlfriend's vehicle was a white Honda SUV and not a white sedan. *Id.* at 17-18.

> A *Brady* violation consists of three elements: (1) suppression by the prosecution (2) of evidence, whether exculpatory or impeaching, favorable to the defendant, (3) to the prejudice of the defendant. *Commonwealth v. Paddy*, 569 Pa. 47, 800 A.2d 294, 305 (2002)….[A] *Brady* violation only exists when the evidence is material to guilt or punishment, *i.e.,* when

---

[7] *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194 (1963).

[8] "A *Brady* claim is cognizable on collateral appeal under the PCRA." *Commonwealth v. Simpson*, 620 Pa. 60, 66 A.3d 253, 264 (2013) (citing *Commonwealth v. Tedford*, 598 Pa. 639, 960 A.2d 1, 30 n. 19 (2008)). *See* 42 Pa.C.S.A. § 9543(a)(2)(vi). Appellant asserts he was unaware of the Commonwealth's alleged *Brady* violations until after the completion of trial and sometime during the course of his appeals. Appellant's Brief at 16.

"there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." ***Id.***

***Commonwealth v. Tedford***, 598 Pa. 639, 960 A.2d 1, 30 (2008) (footnote omitted).

> [Moreover,] [a]s to ***Brady*** claims advanced under the PCRA, a defendant must demonstrate that the alleged ***Brady*** violation "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." ***See Commonwealth v. Copenhefer***, 553 Pa. 285, 719 A.2d 242, 259 (1998). The…United States Supreme Court has held that the mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish materiality in the constitutional sense.

***Commonwealth v. Cam Ly***, 602 Pa. 268, 980 A.2d 61, 75–76 (2009) (most citations, brackets, footnote, and internal quotation marks omitted). "In engaging in this analysis, a reviewing court is not to review the undisclosed evidence in isolation, but, rather, the omission is to be evaluated in the context of the entire record." ***Commonwealth v. Dennis***, 609 Pa. 442, 17 A.3d 297, 308 (2011) (citations and quotation marks omitted).

Additionally, it is noteworthy that "[n]o violation occurs if the evidence at issue is available to the defense from non-governmental sources." ***Tedford***, ***supra***, 960 A.2d at 30.  Also, "no ***Brady*** violation occurs where the appellant knew or could have uncovered the evidence at issue with reasonable diligence." ***Commonwealth v. Morris***, 573 Pa. 157, 822 A.2d 684, 696 (2003) (citation omitted).

Initially, in rejecting Appellant's *Brady* claim as to the DNA analysis of the hair found in the trunk of Mr. Weakley's car, the PCRA court concluded Appellant failed to demonstrate the Commonwealth suppressed the evidence at issue either willfully or inadvertently. *See* PCRA Court Opinion, filed 3/13/19, at 11, 13 (citing *Commonwealth v. Walker*, 613 Pa. 601, 36 A.3d 1 (2011)). In this regard, the PCRA court pointed to the following relevant exchange, which occurred between Appellant's PCRA counsel and his trial counsel during the PCRA evidentiary hearing:

> **Q:** Did you know at the time of trial that the hair sample found in the back of [Mr.] Weakley's car—did you know at that point that there had been a hair sample in the back of [Mr.] Weakley's car that matched something found in [a] glove [from the Goosay house]?
>
> **A:** I don't recall whether I knew or not. But had I—it would have played a greater role, I think, at trial had I known.
>
> ***
>
> **Q:** I think you indicated that you weren't certain whether you knew—you're not certain now whether you knew at the time?
>
> **A:** No. I mean, I would have to review the file to see. I haven't seen it in, I don't know, nine years.
>
> **Q:** It's been a long—almost a decade since the trial, yes. And do you recall—whether you knew it or not, do you recall raising that issue at trial?
>
> **A:** I do not recall raising an issue with respect to a hair found in a trunk of a car[.]
>
> ***
>
> **Q:** Okay. And DNA tests, we'll talk about the hair in the car. Do you have any recollection of receiving that?
>
> **A:** I have no recollection of receiving any DNA analysis on hair in a car.
>
> **Q:** Okay. Is it possible that was not provided to you as part of your pretrial preparation?

**A:** I mean, I would have to see what we had gotten in discovery versus what came up later. I mean, I don't recall it.

N.T., 10/19/18, at 17, 19-20, 43-33.

As the PCRA court concluded, "[t]his evidence is hardly enough to prove that the Commonwealth suppressed [the hair] evidence." PCRA Court Opinion, filed 3/13/19, at 13. Simply put, trial counsel was unable to recall whether the Commonwealth disclosed the hair, or the DNA analysis with respect thereto. *Id.* Accordingly, Appellant did not meet his burden of proof with regard to his first alleged *Brady* violation.[9]

With regard to Appellant's claim the Commonwealth violated *Brady* by failing to disclose that Christina Strom, who was Appellant's ex-girlfriend,

---

[9] Moreover, as the PCRA court additionally concluded, Appellant failed to demonstrate the alleged *Brady* violation with respect to the hair "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." *Cam Ly*, *supra*, 980 A.2d at 75 (quotation and quotation marks omitted). *See* PCRA Court Opinion, filed 3/13/19, at 13.

Appellant contends he was prejudiced by the Commonwealth's alleged failure to disclose the DNA analysis of the hair found in Mr. Weakley's vehicle because the hair found in the vehicle matched a hair found at the Goosay crime scene. N.T., 10/19/18, at 19. He further avers the DNA analysis excluded Appellant as the contributor of the hairs. *See id.* However, assuming, *arguendo*, the hairs do not belong to Appellant, this does not require the conclusion that Appellant did not participate in the Goosay home invasion, along with other co-conspirators. Simply put, Appellant did not demonstrate the result of the proceeding would have been different had the hair DNA evidence been disclosed. *Tedford*, *supra*.

owned a white Honda SUV, as opposed to a white sedan,[10] the PCRA court rejected this claim on the basis that it "is absurd" to suggest the Commonwealth somehow "prevented" Appellant from "knowing the make and model of his own girlfriend's car or from easily being able to obtain this information." PCRA Court Opinion, filed 3/13/19, at 13. Simply put, Appellant knew, or could have uncovered with reasonable diligence, the type of vehicles owned by Ms. Strom. Accordingly, he failed to demonstrate he is entitled to relief under **Brady**. **See Tedford**, **supra**; **Morris**, **supra**.

For all of the foregoing reasons, we affirm.

Affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/4/20

_____

[10] At trial, a Commonwealth witness, Kimberly Smith, testified that she worked at a store near the Goosay's jewelry store. N.T., 7/8/09, at 124-25. On January 27, 2003, the night of the home invasion at the Goosay residence, she was in the parking lot outside of the Goosay's jewelry store when, at approximately 6:40 p.m., she saw Mr. Goosay's vehicle, which she recognized, pull into the parking lot. **Id.** at 125. She observed as a man, who was not Mr. Goosay, exited the vehicle, unlocked the jewelry store's front door, and went inside, at which time the store's alarm began beeping. **Id.** at 126. Ms. Smith testified she then observed a white sedan, which she believed to be a Buick, speed around to the back of the building. **Id.** at 127-28. At trial, the Commonwealth suggested the white "Buick" was actually Christina Strom's white Honda Accord, which Appellant sometimes used. **Id.** at 133.