J-S26018-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| WILFREDO  RODRIGUEZ, JR. | : | |
| | : | |
| Appellant | : | No. 1397 MDA 2020 |

Appeal from the PCRA Order Entered September 21, 2020
In the Court of Common Pleas of York County
Criminal Division at CP-67-CR-0004337-2008

BEFORE:  STABILE, J., MURRAY, J., and MUSMANNO, J.

MEMORANDUM BY MURRAY, J.:                    **FILED OCTOBER 06, 2021**

Wilfredo Rodriguez, Jr. (Appellant) appeals from the order denying his petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546.  After careful review, we affirm.

Appellant was arrested and charged on April 28, 2008 (along with his co-defendant, Dennis Mercado (Mercado)), with criminal homicide and criminal conspiracy.  Appellant and Mercado filed a joint pre-trial motion seeking to suppress, *inter alia*, gunshot residue discovered in Mercado's vehicle, a gold Chevrolet Malibu.  Following a hearing, the trial court granted the motion based on discovery violations.  The Commonwealth appealed, and this Court, agreeing with the Commonwealth, vacated the suppression order. **See Commonwealth v. Rodriguez**, 1603 MDA 2009 (Pa. Super. Dec. 30, 2010) (unpublished memorandum) (**Rodriguez I**).  We remanded the case for further proceedings, and after a three-day trial, a jury convicted Appellant

of first-degree murder. On April 13, 2011, the trial court sentenced Appellant to life in prison. Appellant filed post-sentence motions which the trial court denied. Appellant appealed and this Court affirmed his judgment of sentence. *Commonwealth v. Rodriguez*, 1340 MDA 2011 (Pa. Super. April 9, 2012) (unpublished memorandum) (*Rodriguez II*).

On May 16, 2013, Appellant filed a "Petition for Allowance of Appeal *nunc pro tunc*." The court properly construed the motion as a PCRA petition, and on September 27, 2013, granted Appellant's request to reinstate his appeal rights *nunc pro tunc*. The Pennsylvania Supreme Court denied Appellant's petition for review on January 21, 2014. *See Commonwealth v. Rodriguez*, 83 A.3d 762 (Pa. 2014) (Table).

On January 21, 2015, Appellant *pro se* filed the underlying PCRA petition, and a supplemental *pro se* petition on February 23, 2016. On March 29, 2016, Appellant filed a motion for leave to proceed *in forma pauperis* and requested the appointment of counsel. The PCRA court granted Appellant's motion and appointed counsel on April 19, 2016. Appellant filed a second *pro se* supplemental petition on December 2, 2016.[1] Following multiple continuances and several motions for appointment of new counsel due to

---

[1] Appellant's *pro se* filing while represented by counsel is considered "hybrid" representation and is prohibited. *See Commonwealth v. Staton*, 184 A.3d 949, 958 (Pa. 2018) (no defendant has a constitutional right to self-representation together with counseled representation "either at trial or on appeal"); *see also Commonwealth v. Jette*, 23 A.3d 1032, 1036 (Pa. 2011) (citing Pennsylvania's long-standing policy precluding hybrid representation).

conflicts of interest, new PCRA counsel, Charles J. Hobbs, Esquire (PCRA Counsel), was appointed and filed an amended petition on June 14, 2018. PCRA Counsel filed a second amended petition on July 17, 2018.

On July 31, 2018, the PCRA court held an evidentiary hearing to address Appellant's claims. At the conclusion of the hearing, the court ordered the parties to file briefs, which Appellant filed on November 5, 2018, and the Commonwealth filed on January 14, 2019; Appellant also filed a reply brief on March 15, 2019. On September 16, 2020, without explanation for the delay appearing of record, the PCRA court entered an order and opinion denying relief.[2] Appellant timely appealed. Both Appellant and the PCRA court complied with Pa.R.A.P. 1925.

Appellant presents four issues for review:

I. WHETHER THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY FINDING THAT THE COMMONWEALTH DID NOT VIOLATE APPELLANT'S SIXTH AMENDMENT RIGHTS BY FAILING TO DISCLOSE THE EXISTENCE OF A PLEA AGREEMENT WITH A KEY COMMONWEALTH WITNESS IN VIOLATION OF *BRADY V. MARYLAND*, 373 U.S. 83 [] (1963), AND *COMMONWEALTH V. STRONG*, [] 761 A.2D 1167 ([PA.] 2000)?

---

[2] The PCRA court filed its order and opinion on September 16, 2020, and Appellant filed his notice of appeal on October 20, 2020. The appeal appears untimely because it was filed more than "30 days after entry of the order from which the appeal is taken," Pa.R.A.P. 903(a). However, the docket indicates Appellant did not receive notice until September 21, 2020. Thus, his appeal is timely. *See Commonwealth v. Jerman*, 762 A.2d 366, 368 (Pa. Super. 2000) (explaining appeal period is triggered by "formal entry" of notice on the docket).

II.  WHETHER THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY FINDING THAT APPELLANT'S TRIAL COUNSEL DID NOT DEPRIVE HIM OF HIS SIXTH AMENDMENT RIGHTS UNDER **STRICKLAND V. WASHINGTON**, 466 U.S. 668 [] (1984) BY FAILING TO RENEW A MOTION TO SUPPRESS?

III. WHETHER THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY FINDING THAT APPELLANT'S TRIAL COUNSEL DID NOT DEPRIVE HIM OF HIS SIXTH AMENDMENT RIGHTS UNDER **STRICKLAND V. WASHINGTON**, 466 U.S. 668 [] (1984), BY FAILING TO CALL HENRY GONZALEZ AS A DEFENSE WITNESS AT TRIAL?

IV.  WHETHER THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY FINDING THAT APPELLANT'S TRIAL COUNSEL DID NOT DEPRIVE HIM OF HIS SIXTH AMENDMENT RIGHTS UNDER **STRICKLAND V. WASHINGTON**, 466 U.S. 668 [] (1984), BY FAILING TO INTERVIEW DENNIS MERCADO AND CALL HIM AS A DEFENSE WITNESS AT TRIAL?

Appellant's Brief at 4-5.

When reviewing an order denying PCRA relief, we consider the record "in the light most favorable to the prevailing party at the PCRA level." **Commonwealth v. Stultz**, 114 A.3d 865, 872 (Pa. Super. 2015) (quoting **Commonwealth v. Henkel**, 90 A.3d 16, 20 (Pa. Super. 2014) (*en banc*)). This Court is limited to determining whether the evidence of record supports the conclusions of the PCRA court and whether the ruling is free of legal error. **Commonwealth v. Rykard**, 55 A.3d 1177, 1183 (Pa. Super. 2012). We grant great deference to the PCRA court's findings that are supported in the record and will not disturb them unless they have no support in the certified record. **Commonwealth v. Rigg**, 84 A.3d 1080, 1084 (Pa. Super. 2014).

- 4 -

In his first issue, Appellant asserts the Commonwealth violated **_Brady_**

**_v. Maryland_**, 373 U.S. 83 (1963), which provides that the prosecution must

disclose evidence favorable to the accused that is material either to guilt or

punishment.   Appellant contends the Commonwealth failed to disclose the

existence of a plea agreement with a key Commonwealth witness, Joseph

Viera (Viera).  Appellant argues:

> … Appellant was convicted of first-degree murder based, in part, on the testimony of Joseph Viera.  Viera testified at trial that Appellant confessed to the murder.  Specifically, he stated that Appellant told him that he killed [the victim] after he had left a bar and began firing upon him with an "AK."
>
> Appellant's trial counsel, Richard Robinson, [E]squire, impeached Viera with conflicting statements and the fact that he was receiving substantial consideration from the Commonwealth relating to his outstanding criminal charges.[3]  However, in addition to his outstanding criminal charges, Viera was also being detained by Immigration and Customs Enforcement (ICE) officials, and facing mandatory deportation, due to a 1999 felony conviction for possession with the intent to deliver a controlled substance (PWID).[4]
>
> > [3] Viera testified that he was advised by the Commonwealth that it would dismiss his charge of making a false statement relative to the purchase of a firearm.  **_See_** 18 Pa.C.S.A. § 6111(g).
> >
> > [4] 35 P.S. § 780-113(30).
>
> Trial counsel then attempted to cross-examine Viera regarding his immigration detainer and potentially receiving consideration from the government on that as well. . . .
>
> . . . Viera though, subsequently denied on cross-examination that he was receiving any consideration from the Commonwealth regarding his immigration case.

> Following the trial however, Appellant discovered that Viera did receive consideration from the Commonwealth that related to his immigration case. A review of the criminal docket in **Commonwealth v. Joseph Viera**, No. CP-67-CR-0001732-1999, shows that, on April 4, 2011, just three (3) weeks following Appellant's trial, Viera's felony conviction for PWID was amended by the Commonwealth to a misdemeanor for simple possession.
>
> \*\*\*
>
> Viera was not deported following the degrading of his 1999 conviction from a felony to a misdemeanor.

Appellant's Brief at 20-22. Appellant asserts the above information proves the Commonwealth agreed to amend Viera's 1999 felony conviction for PWID to a misdemeanor in exchange for his cooperation and testimony at Appellant's trial. **Id.** at 23.

We review Appellant's claim mindful that due process is offended when the prosecution withholds evidence favorable to the accused and the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. **Brady**, 373 U.S. at 87. "There are three components of a true **Brady** violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." **Strickler v. Greene**, 527 U.S. 263, 281-82 (1999).

In addition, the prosecutor "has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." **Kyles v. Whitley**, 514 U.S. 419, 437 (1995). However, there is "no constitutional requirement that the prosecution make a complete

and detailed accounting to the defense of all police investigatory work on a case." *Moore v. Illinois*, 408 U.S. 786, 795 (1972). "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *United States v. Agurs*, 427 U.S. 97, 109-10 (1976).

Instead, "favorable evidence is material, and constitutional error results from its suppression by the government, if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Kyles*, 514 U.S. at 433 (quotation and citation omitted). "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley*, 473 U.S. 667, 682 (1985). In evaluating whether a reasonable probability of a different outcome has been demonstrated, the question "is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Kyles*, 514 U.S. at 434. A defendant "need not demonstrate that after discounting the inculpatory evidence in light of the undisclosed evidence, there would not have been enough left to convict." *Id.* at 434-35. Rather, a defendant need only show that the favorable evidence "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Id.* at 435.

Here, the Commonwealth references the PCRA court's determination that the prosecutor "may have 'willfully or, likely, inadvertently suppressed' a possible plea deal and it would have been favorable to the [Appellant] to be able to ask specific questions." Commonwealth Brief at 19-20 (quoting PCRA Court Opinion, 9/16/20, at 11). However, the Commonwealth emphasizes the PCRA court's determination that the suppressed information was immaterial and Viera's "two pages of direct examination could not have been determinative of [Appellant's] guilt or innocence in light of the overwhelming evidence implicating Appellant." *Id.* at 20. Upon review, we agree.

In rejecting Appellant's **Brady** claim, the PCRA court concluded that although the prosecutor "willfully or, likely, inadvertently suppressed" evidence regarding consideration in Viera's immigration case, the evidence was immaterial and its omission did not prejudice Appellant. PCRA Court Opinion, 9/16/20, at 11. The PCRA court explained:

> Though the witness in question, Mr. Viera, denied any link between his 1999 case and the [Appellant's], the fact of the matter is that the trial court overruled the Commonwealth's objection to plumbing the connection. Mr. Viera's answers might have been evasive; however, the defense was permitted to examine the witness and probe his belief about any consideration he would be receiving. The jury was on notice that the witness had outstanding immigration concerns. Even if Mr. Viera's understanding with the Commonwealth should have been more fully revealed to the jury, we still could not find prejudice to the [Appellant]. The reliability of Mr. Viera could not have been determinative of guilt or innocence in light of the record as a whole.

*Id.* at 12 (internal citations omitted). The PCRA court subsequently detailed the evidence the trial court – and this Court on direct appeal – relied on in stating "the record aptly supports the conclusion that Appellant shot [the victim] to death." *Id.* at 14 (quoting *Rodriguez II*, 1340 MDA 2011, at *26-29). The PCRA court determined that absent Viera's testimony, the evidence "against [Appellant,] considered *in toto*, supports our contention that the reliability of Mr. Viera could not have been determinative of guilt or innocence in light of the record as a whole." *Id.* at 14. As the record supports this determination, we discern no error.

Appellant's remaining issues challenge the effectiveness of trial counsel. In reviewing such claims, we begin with the presumption that counsel was effective. *Commonwealth v. Bomar*, 104 A.3d 1179, 1188 (Pa. 2014). To overcome that presumption, the petitioner must establish: "(1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's action or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's error, with prejudice measured by whether there is a reasonable probability that the result of the proceeding would have been different." *Id.* (citing *Commonwealth v. Pierce*, 786 A.2d 203, 213 (Pa. 2001)). A PCRA petitioner must address each of these prongs on appeal. *See Commonwealth v. Natividad*, 938 A.2d 310, 322 (Pa. 2007) (explaining "appellants continue to bear the burden of pleading and proving each of the *Pierce* elements on appeal to this Court"). A petitioner's failure to satisfy any

prong of this test is fatal to the claim. ***Commonwealth v. Wholaver***, 177 A.3d 136, 144 (Pa. 2018).

In his second issue, Appellant claims trial counsel was ineffective for failing to renew the suppression motion related to gunshot residue after this Court vacated the trial court's order granting suppression. The particles of gunshot residue were discovered in a gold 2001 Chevrolet Malibu operated by Appellant's co-defendant, Dennis Mercado. After police collected samples of the residue, according to the Commonwealth, the police "simply forgot" about the samples and did not conduct any testing. N.T., 9/14/09, at 11. On August 14, 2009, while preparing for trial, the Commonwealth noticed the omission and contacted police; the residue samples were sent for analysis on August 27, 2009. On September 10, 2009 – four days before trial – the Commonwealth received the gunshot residue report, which it provided to defense counsel the next day.

Appellant and Mercado jointly moved to preclude the admission of the report, which the trial court granted after determining the Commonwealth "had violated the rules governing discovery." ***Rodriguez I***, 1603 MDA 2009, at *4. The Commonwealth appealed, and this Court vacated the order, concluding:

> … The present record contains no evidence that the Commonwealth's failure to have the items tested resulted from anything other than an inadvertent omission. In short, even with the long delay between the time the items were seized and the time the items were tested, the record reveals that the Commonwealth did not come into possession of the gunshot

residue report until September 10, 2009, and that counsel for the
Commonwealth promptly provided defense counsel with copies of
the report the following day, September 11, 2009.

*Id.* at 8-9 (footnote omitted). Accordingly, we remanded the case for further
proceedings.

Appellant argues trial counsel was ineffective for failing to renew a
suppression motion following remand. He contends that because Mercado
subsequently entered a plea agreement to tampering with evidence and "was
no longer charged with or convicted of the murder of [the victim], the items
that were seized from his car were no longer relevant to the case against
Appellant. Said another way, unless and until the Commonwealth could
establish a nexus between the items found in Mercado's car and Appellant,
then they were not relevant under Pa.R.E. 601." Appellant's Brief at 29.

On direct appeal, this Court reviewed this claim, where Appellant
argued:

> Although gunshot residue was discovered inside a gold Chevrolet
> Malibu belonging to the co-defendant, Dennis Mercado, no
> evidence ever placed Appellant inside that vehicle. One witness,
> A'Tara Sweeney, claimed to have seen Appellant in a "black"
> vehicle prior to the shooting on April 10, 2008. Another witness,
> Rene Santiago, testified that Appellant and Mr. Mercado had met
> him on the morning on April 11, 2008 in a "black" or otherwise
> "dark colored Acura." But again, no testimony was ever offered
> which placed Appellant inside a gold vehicle. And though a black
> knit cap, some latex gloves, and a black face mask were located
> inside of Mr. Mercado's gold Chevrolet Malibu, none of those items
> were checked for DNA-related evidence.

Appellant's Brief (*Rodriguez II*) at 37-38.

Appellant is attempting to re-litigate the relevancy of the items recovered from Mercado's vehicle by assailing trial counsel's effectiveness in failing to file a suppression motion following remand. Case law provides that ineffectiveness claims are distinct from claims raised on direct appeal and should be reviewed under the three-prong ineffectiveness standard. ***See Commonwealth v. Collins***, 888 A.2d 564, 573 (Pa. 2006). Nonetheless, in analyzing Appellant's claim under the rubric of trial counsel's ineffectiveness, no relief is due. As our Supreme Court made clear in ***Collins***, we will analyze a distinct claim of ineffectiveness that is based on an issue decided on direct appeal, but in many cases the claim will fail for the same reasons it failed on direct appeal. ***Id.*** at 574-75. Here, this Court rejected Appellant's claim on direct appeal, and thus, trial counsel cannot be deemed ineffective for failing to raise a meritless claim. ***Commonwealth v. Jones***, 912 A.2d 268, 278 (Pa. 2006). Appellant's second issue lacks merit.

In his remaining two issues, Appellant asserts trial counsel was ineffective for failing to call Henry Gonzalez (Gonzalez) and Mercado as defense witnesses.

> When raising a claim of ineffectiveness for the failure to call a potential witness, a petitioner satisfies the performance and prejudice requirements [ ] by establishing that: (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

- 12 -

> Prejudice in this respect requires the petitioner to "show how the uncalled witnesses' testimony would have been beneficial under the circumstances of the case." Therefore, the petitioner's burden is to show that testimony provided by the uncalled witnesses "would have been helpful to the defense."

***Commonwealth v. Selenski***, 228 A.3d 8, 16 (Pa. Super. 2020) (citations omitted).

Concerning Gonzalez, Appellant asserts a "major part of the Commonwealth's theory of guilt was that Appellant was operating a black Acura at the time of the murder." Appellant's Brief at 37. Appellant suggests Gonzalez's testimony would have "verified that Appellant's black Acura was, in fact, inoperable and being held at the garage approximately a month or two prior to [the murder]." ***Id.*** at 38. However, because trial counsel never called Gonzalez to testify, "the jury was never made aware that the black Acura in question could not have been operated by Appellant[.]" ***Id.***

There is no merit to this issue. Appellant has met the first four prongs stated above; Gonzalez existed, was available to testify, trial counsel knew of his existence, and Gonzalez expressed a willingness to testify. ***See*** N.T., 10/26/17, at 38-40. However, Appellant cannot satisfy the fifth prong – that the absence of Gonzalez's testimony was prejudicial. The PCRA court explained:

> Rene Santiago[3] testified that he received a call from the [Appellant's] codefendant, Dennis Mercado, about their car having broken down and Mr. Santiago went to meet them. Per the statement written by police, which Mr. Santiago signed, the codefendants were in a black car. Questioned by the defense

---

[3] Rene Santiago was an acquaintance of Appellant and Mercado.

about this, Mr. Santiago stated, "I know it's **dark colored**." Pressed by the defense, he admitted he described the vehicle to police as black. On redirect, Mr. Santiago stated that he knew the [Appellant] to have three Acuras, described as blue, black, and green *and that they were all **dark-colored***. On re-cross examination, Mr. Santiago testified that he knew the difference between blue, black, and green.

[Appellant] operated three **dark-colored** vehicles and, per Mr. Santiago, they were all Acuras. Though Mr. Santiago testified that he knew the difference between blue, black, and green, it would be easy to mistake a dark-colored vehicle for black – especially when the observer knows the operator to possess a black version of the vehicle. There is simply no other reason to describe a vehicle as dark-colored except that it leaves one with the impression of that vehicle being an analog for black. Trial counsel, Attorney Robinson, testified during the PCRA proceedings that the unexpended round of 7.62 millimeter ammunition was found in the blue Acura. Thus, ammunition of the sort employed in the murder was found in the blue Acura that Mr. Santiago described as being dark-colored. Moreover, the jury was well-aware that Mr. Santiago had admitted to telling the police, originally, that the vehicle he observed was black. In the context of a case in which [Appellant] had access to the type of weapon and ammunition utilized in the murder, had a motive to want the victim dead, and had made incriminating statements, we do not believe that any prejudice resulted from the failure to call Mr. Gonzalez as a witness. Put another way, the jury was already aware that [Appellant] was disputing the color of the car. This is shown, *exempli gratia*, in Attorney Robinson's cross-examination of Rene Santiago. Moreover, no prejudice can have accrued to the [Appellant] where the jury was free to infer that individuals might mistake the difference between a dark, blue-colored sedan and a black one of the same make.

PCRA Court Opinion, 9/16/20, at 29-30 (emphasis in original, citations omitted).

Our review comports with the above rationale. The jury was aware Appellant owned three dark-colored Acuras, and Gonzalez's testimony would have been redundant given the testimony of Appellant and Santiago in this

- 14 -

regard. Additionally, as the PCRA court observed, it would be reasonable for the jury to infer that because Appellant owned three dark-colored Acuras, Santiago could have mistakenly described the dark-blue Acura as "black." As Gonzalez's testimony would have simply corroborated the testimony of Appellant and Santiago, Appellant was not prejudiced.

Finally, Appellant asserts trial counsel was ineffective for failing to call Mercado as a defense witness. He argues the Commonwealth introduced and the jury heard "very detailed and specific information that Mercado and his gold-colored vehicle were involved in the crime." Appellant's Brief at 44. Appellant suggests the Commonwealth "reaped the benefits to all the facts surrounding Mercado's guilt, and tying them to Appellant, without ever having to call him as a witness at trial. . . . However, Mercado's testimony that he was the owner of the items found in his car, and that they were not connected to Appellant, would have contradicted the Commonwealth's theory of the case that they were." *Id.* at 47.

Appellant has met the first, third and fourth prongs stated above; Mercado existed, trial counsel knew of his existence, and Mercado expressed a willingness to testify.[4] However, Appellant cannot satisfy the second and fifth prongs. With respect to the second prong – the witness's availability to testify – Attorney Robinson testified at the PCRA hearing that he contacted

---

[4] Mercado testified at the PCRA hearing that he would have testified on behalf of Appellant at trial. *See* N.T., 7/31/18, at 41.

Mercado's attorney about Mercado testifying at trial on Appellant's behalf, but was told Mercado would not assist in Appellant's defense. N.T., 7/31/18, at 20-22. Although Mercado stated at the PCRA hearing he was **willing** to testify on Appellant's behalf, his attorney indicated he was not **available** to testify.

Also, Appellant cannot satisfy the fifth prong – that he was prejudiced by the absence of Mercado's testimony. The PCRA court found Mercado's testimony "utterly incredible." PCRA Court Opinion, 9/16/20, at 34. The court stated:

> Mr. Mercado could not or would not recall his guilty plea or why he had entered one; yet we were to believe every helpful thing that he offered regarding [Appellant]. Either Mr. Mercado's plea was [] riddled by falsehoods or his PCRA testimony was. We cannot conceive of a jury knowing what to do with Mr. Mercado's testimony except to ignore it.

*Id.* at 34-35. Moreover, Mercado's testimony that the items found in the gold Malibu belonged to him (and not Appellant), is yet another attempt by Appellant to raise an argument he advanced on direct appeal, and this Court rejected. Appellant's final issue lacks merit.

For the above reasons, the PCRA court did not abuse its discretion in denying Appellant's request for post-conviction relief.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/6/2021