J-S35007-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOSE TORRES | : | |
| | : | |
| Appellant | : | No. 2382 EDA 2018 |

Appeal from the PCRA Order Entered July 12, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0011954-2010

BEFORE:   BOWES, J., STABILE, J., and COLINS, J.[*]

MEMORANDUM BY BOWES, J.:                      **FILED SEPTEMBER 15, 2020**

Jose Torres appeals from the order that dismissed without a hearing his

petition filed pursuant to the Post Conviction Relief Act ("PCRA"). We affirm.

This Court on Appellant's direct appeal deemed the following an accurate

summary of the facts underlying Appellant's conviction.

> On May 9, 2010, at around 6:30 p.m., Felix Santos Sr. ("Felix Sr."), along with his wife Cristina, seven-year-old daughter, and 18-year-old son Felix Santos Jr. ("Felix Jr."), returned to West Butler Street in Philadelphia. Felix Sr. double-parked his car in front of [Appellant's residence], and his family began to unload the shopping bags from the car. A few minutes later, while Felix Sr. was still in the house, Felix Jr. noticed that a parking spot had become available, and told his father that he would move the car into the spot. Once he did so, some of [Appellant's] family came out of their house, including Blanca Hernandez, Appellant's mother. Hernandez proceeded to spit in Felix Sr.'s face for taking her parking spot. At this point, Felix Sr. decided to take his family inside in order to avoid a violent confrontation.

---

[*] Retired Senior Judge assigned to the Superior Court.

Just minutes later, while Felix Sr. was telephoning the police, Appellant came up to the Santos house and began to shake the front gate. Appellant told Felix Sr. to come outside so that he could kill him. Before the police arrived, Appellant went back to his house, returned with a shovel, and began to smash the Santos'[s] car with it. Because of Appellant's actions, the car alarm went off, and Felix Sr. saw that the hood and mirror of the car were damaged. After hearing the alarm, while still waiting for the police to arrive, Felix Sr. decided to go outside, and his wife, Felix Jr., and young daughter followed. In order to protect himself from any further violence, Felix Sr. took his son's baseball bat on his way outside. After a brief scuffle between a young woman from [Appellant's] family and Felix Sr.'s son and daughter, the police finally arrived. The police told both parties to go back to their respective houses, and to not come back out. After doing so, the police departed.

The Santos family followed the police's orders, and returned to their house, along with their other son, D.S., who was 14 at the time, as well as Felix Sr.'s brother. The latter two were not present during the initial incident, but returned from work while the police were on scene. Just minutes after the Santos family had returned to their house, they received a call from Stephany, Felix Sr.'s niece, saying that A., Felix Sr.'s 14-year-old nephew, was getting beaten up on the street. Felix Sr. decided to go back outside in order to help his nephew. Again, his family followed him outside in order to assist him.

After trying to help his nephew, three males, one of them being Appellant, came after Felix Sr. Felix Sr. tried running back into his house out of fear of what they may do to him. However, while he was still on his porch, two of the individuals grabbed his arms, and Appellant proceeded to stab him three times in the chest. After stabbing Felix Sr., the two males that had held him down, and Appellant, left the crime scene. At this point, Felix Sr.'s family saw him lying bloody and unconscious on the porch of his house. Stephany called the police.

When the police arrived, they rushed Felix Sr. to the emergency room at Temple University Hospital. According to Dr. Amy Goldberg, the physician who treated Felix Sr., the stab wounds were very serious. When Felix Sr. arrived at the hospital, he had a very faint pulse, if any, and was barely breathing. Because of the extreme loss of blood and corresponding lengthy

> lack of oxygen, his brain suffered severely. To this day, he remains on life support and is unconscious.

*Commonwealth v. Torres*, 120 A.3d 1062 (Pa.Super. 2015) (unpublished memorandum at 1-3) (cleaned up).

Following a seven-day trial, a jury convicted Appellant of attempted murder, aggravated assault, and conspiracy. Appellant was sentenced to an aggregate term of thirty to sixty years of imprisonment, and this Court affirmed Appellant's judgment of sentence. *See id*. Of note, the issue Appellant raised on direct appeal concerned the trial court's failure to instruct the jury pursuant to *Commonwealth v. Kloiber*, 106 A.2d 820 (Pa. 1954), to view with caution the eyewitness testimony of three of the Santos family members. This Court rejected his claim that a new trial was warranted, holding, *inter alia*, that the trial court properly declined to give the instruction because the witnesses knew Appellant as their neighbor and could clearly see him attack Felix Sr. *See Torres*, *supra* (unpublished memorandum at 9). Appellant did not seek discretionary review in our Supreme Court.

Appellant filed a timely *pro se* PCRA petition. Counsel was appointed and filed an amended petition claiming that trial counsel was ineffective for failing to call Margarita Davila as an alibi witness. The petition alleged that Ms. Davila was the mother of Appellant's child; that at the time Felix Sr. was stabbed, Appellant was barricaded in an upstairs bedroom of the Torres residence with her nursing a baseball-bat injury from the earlier altercation; that she provided her contact information to trial counsel; and that she

informed Appellant's mother of her willingness to testify at trial. *See* Amended PCRA Petition, 9/19/17, at ¶ 18. The petition further indicated that if Appellant's request for an evidentiary hearing was granted, Ms. Davila would testify to the above, and Appellant's mother would testify that she informed trial counsel of Ms. Davila's willingness to offer alibi testimony at trial. *Id*. at ¶ 26.

The Commonwealth filed a motion to dismiss the amended PCRA petition, arguing that it was incredible that Appellant waited until two years after his trial to mention that he had an alibi witness, and, in any event, calling Ms. Davila would not have had any impact on the outcome of the trial. *See* Supplemental Motion to Dismiss, 5/4/18, at 9. The PCRA court agreed, and issued notice of its intent to dismiss the petition without a hearing pursuant to Pa.R.Crim.P. 907. Appellant filed no response, and the court dismissed the petition by order of July 12, 2018.

Appellant filed a timely notice of appeal, and both Appellant and the PCRA court complied with Pa.R.A.P. 1925. Appellant presents the following issue for our consideration: "Did the PCRA Court err and/or abuse its discretion when it denied and dismissed, without a hearing, [Appellant's] petition under the PCRA seeking a new trial based upon a claim that trial counsel was ineffective for failing to present an alibi witness at trial?" Appellant's brief at 4.

- 4 -

We begin with a review of the applicable legal principles. "This Court's standard of review regarding an order denying a petition under the PCRA is whether the determination of the PCRA court is supported by the evidence of record and is free of legal error." ***Commonwealth v. Rizvi***, 166 A.3d 344, 347 (Pa.Super. 2017). "[A] PCRA court has discretion to dismiss a PCRA petition without a hearing if the court is satisfied that there are no genuine issues concerning any material fact; that the defendant is not entitled to post-conviction collateral relief; and that no legitimate purpose would be served by further proceedings." ***Commonwealth v. Cruz***, 223 A.3d 274, 277 (Pa.Super. 2019) (internal quotation marks omitted). Further, "[i]t is an appellant's burden to persuade us that the PCRA court erred and that relief is due." ***Commonwealth v. Stansbury***, 219 A.3d 157, 161 (Pa.Super. 2019) (internal quotation marks omitted).

Counsel is presumed to be effective, and a PCRA petitioner bears the burden of proving otherwise. ***Commonwealth v. Becker***, 192 A.3d 106, 112 (Pa.Super. 2018). To do so, the petitioner must plead and prove: "(1) the underlying legal claim is of arguable merit; (2) counsel's action or inaction lacked any objectively reasonable basis designed to effectuate his client's interest; and (3) prejudice, to the effect that there was a reasonable probability of a different outcome at trial if not for counsel's error." ***Commonwealth v. Selenski***, 228 A.3d 8, 15 (Pa.Super. 2020) (internal quotation marks omitted). "A reasonable probability is a probability that is

sufficient to undermine confidence in the outcome of the proceeding." *Id*. at 16 (cleaned up). The failure to establish any prong is fatal to the claim. *Id*. at 15.

Relevant to Appellant's substantive claim, we note that "[c]ounsel has a general duty to undertake reasonable investigations or make reasonable decisions that render particular investigations unnecessary." *Commonwealth v. Johnson*, 966 A.2d 523, 535 (Pa. 2009). "The duty to investigate, of course, may include a duty to interview certain potential witnesses; and a prejudicial failure to fulfill this duty, unless pursuant to a reasonable strategic decision, may lead to a finding of ineffective assistance." *Id*. at 535-36.

> [W]hen raising a claim of ineffectiveness for the failure to call a potential witness, a petitioner satisfies the performance and prejudice requirements of the [*Strickland v. Washington*, 466 U.S. 668 (1984)] test by establishing that: (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial[.]
>
> To demonstrate *Strickland* prejudice, a petitioner must show how the uncalled witnesses' testimony would have been beneficial under the circumstances of the case. Counsel will not be found ineffective for failing to call a witness unless the petitioner can show that the witness's testimony would have been helpful to the defense.

*Commonwealth v. Matias*, 63 A.3d 807, 810-11 (Pa.Super. 2013) (citations and quotation marks omitted).

It is undisputed that Appellant came forth with evidence to establish that Ms. Davila existed, and that she was willing and available to testify. The PCRA court did not base its decision on these factors. Rather, the PCRA court found the third and fifth elements of the claim lacking.

Regarding the third element, the PCRA court indicated:

> In the instant matter, [A]ppellant's PCRA petition failed to set forth any facts or relevant information necessary to meet his burden of proving to this [c]ourt that his claim was of arguable merit. Specifically, [A]ppellant's petition failed to provide this [c]ourt with any information or indicia whatsoever that trial counsel knew or should have known of the existence of Ms. Davila as a potential alibi witness.

PCRA Court Opinion, 7/23/19 at 5.

We disagree. Appellant pled in his amended PCRA petition that trial counsel knew or should have known of the existence of Ms. Davila as a witness because both she and Appellant's mother provided her information to counsel, and he offered to prove it at an evidentiary hearing through his own testimony and that of his mother and Ms. Davila as witnesses. *See* Appellant's brief at 34-36. Accordingly, we cannot agree that Appellant's proffer as to the third element of the claim warranted its dismissal without a hearing.

The PCRA court also determined that Appellant could not satisfy the fifth and final element: prejudice. The PCRA court explained as follows:

> [G]iven the compelling evidence of [A]ppellant's guilt, there is little likelihood that Ms. Davila's testimony would have changed the outcome of the proceedings. Ms. Davila's testimony would have been easily contradicted by the evidence presented at trial. Both Cristina and Carmen Santos positively identified appellant as the assailant who stabbed the victim. Christina Santos, the wife

- 7 -

of the victim, was only 15 feet away from her husband when he was being stabbed, and testified that she "could see [Appellant] perfectly." Carmen Santos had "no doubt" that appellant stabbed the victim. [D.S.] also identified [Appellant] as the one who took the bat from the victim and hit him with it. Lastly, when [A]ppellant was apprehended in Ms. Davila's house, he had blood on his hands.

Therefore, [A]ppellant's petition also fails to set forth by a preponderance of the evidence that he was prejudiced by the absence of Ms. Davila's testimony. Ms. Davila's testimony would have told a narrative to the jury that was not corroborated by any testimony or evidence presented at trial and would conversely have been contradicted by all of the evidence presented. As such, [A]ppellant's petition fails to establish that had Ms. Davila testified, the outcome of the trial would have been different.

PCRA Court Opinion, 7/23/19 at 7 (citations omitted).

Appellant responds as follows:

It is beyond cavil that the proffered alibi testimony from Ms. Davila would have been helpful to the defense in this matter. There was no physical or forensic evidence at all linking [Appellant] to the crime. The only evidence linking him to the crime is the identification by the victim's family members. The PCRA court correctly notes that Ms. Davila's proffered testimony is directly at odds with the identification testimony from the victim's family members. What the PCRA court omits from its analysis regarding prejudice is the fact that significant portions of Ms. Davila's testimony are corroborated by a responding police officer. Accordingly, the PCRA court is incorrect when it finds that, "Ms. Davila's testimony would have told a narrative to the jury that was not corroborated by any testimony or evidence presented at trial and would conversely have been contradicted by all of the evidence presented."

Appellant's brief at 42 (citation omitted).

In making his argument, Appellant details the alibi testimony Ms. Davila would have offered, as disclosed in her affidavit. That includes contentions that "the neighbor" (presumably Felix Sr.) nearly ran over Appellant's sister

Olga when he swooped in to take the open parking spot; during the ensuing argument, the neighbor hit Appellant and Olga with a baseball bat, yet the police did nothing when Appellant and Olga showed them their bruises; after the police left, the neighbor attacked Appellant with the bat and a machete as Ms. Davila prepared to take Appellant to the hospital, so she called the police again and took Appellant back into the house and locked themselves into a bedroom. *See* Appellant's brief at 39-40. Ms. Davila further related as follows in the affidavit:

> When the police came into the room they saw [Appellant] laying down on the bed with a dislocated arm and his other forearm bruise[d]. That's when the police told us that somebody had been seriously hurt and called an ambulance for [Appellant]. When the ambulance arrived and we were entering [it,] the wife of the neighbor yelled at us in Spanish "I know you didn't do this but since the fight started with your family I'm going to make sure you pay for it," and another neighbor yelled at [Appellant] "You better hope you end up in jail because if I catch you on the street you are going to be found dead." When we were at the hospital the police officer took [Appellant] and my statement and stayed by us until we left the hospital. That's what I remember about what happened on the day that [Appellant] was being accused for.

*Id*. at 40.

Appellant maintains that this version of events is corroborated by Philadelphia police officer Roberto Luciano, who gave the following report:

> [Officer] Luciano could hear a man screaming from upstairs saying "Help" "My shoulder." [Officer] Luciano goes upstairs and sees [Appellant] lying on a bed with covers up to his neck. There are 6 kids all under the age of four on top of him. There is a teenaged girl to his side. [Officer] Luciano pulls his weapon [and] says, "don't do anything stupid[.]" The girl takes the kids off [of Appellant] and takes the covers off of [him] so [Officer] Luciano could see if there were any weapons. [Appellant] is patted down

- 9 -

- no weapons. There were some blood stains on the hands of [Appellant]. [Appellant] says he was jumped and he was hurt but could not tell who hurt him, or explain why be was in the bed. [Officer] Luciano gets his ID. At that point Luciano did not know [Appellant] was a suspect so he lets him go to the hospital to be treated for shoulder injury.

Appellant's brief at 41-42 (quoting Trial Exhibit D-4). Put into the context of all of the evidence, Appellant asserts that he has sufficiently undermined confidence in the outcome of the proceedings to warrant the grant of PCRA relief. *Id*. at 42-43.

The Commonwealth insists that Appellant has not satisfied the prejudice prong of his claim. First, it notes that Officer Luciano testified that he found Appellant holed up in his bedroom, with blood on his hands and no visible injuries, shortly after Felix Sr. had been stabbed, and Appellant did not report having been hit in the shoulder with the bat. *See* Commonwealth's brief at 12. With the allegation of police corroboration of Ms. Davila's story dispelled, the Commonwealth maintains that the evidence identifying Appellant as the culprit was so overwhelming that Ms. Davila's testimony would not have changed the outcome of the proceedings. The Commonwealth summarizes that evidence as follows:

Cristina and Carmen Santos – who both knew [Appellant] from the neighborhood – both positively identified [him] as the person who stabbed the victim. Cristina Santos was fifteen feet away from her husband when defendant stabbed him multiple times in the chest, and she "could see [Appellant] perfectly." Carmen Santos was also present at the time of the attack and stated at trial that she had "no doubt" that [Appellant] stabbed the victim. Further, [D.S.] also identified [Appellant] in court, stating that he saw [Appellant] grab the bat from the victim and beat him with it.

> Contrary to [Appellant]'s mistaken belief, there was ample evidence demonstrating that he attacked and stabbed the victim. Accordingly, defendant failed to demonstrate that he suffered prejudice as a result of trial counsel not calling [Ms.] Davila as a witness.

*Id*. (citations omitted).

Upon review of the evidence, we are not persuaded that the PCRA court erred in finding insufficient indicia of prejudice. The portions of Ms. Davila's testimony corroborated by Officer Luciano's account—that Appellant was hiding nearby shortly after the stabbing with blood on his hands—in no way suggests that Appellant did not stab the victim as the many eyewitness neighbors reported. Further, as this Court observed in adjudicating Appellant's direct appeal, there was no basis to conclude that the identification of Appellant by three witnesses who were familiar with him before the incident and had a clear view of the stabbing was unreliable.

Given the extent of the evidence to support the conviction, we cannot find that the PCRA court committed an error of law or an abuse of discretion in concluding that Appellant could not establish that the absence of Ms. Davila's testimony denied Appellant a fair trial. *Cf. Commonwealth v. Stewart*, 84 A.3d 701, 714 (Pa.Super. 2013) (holding the defendant was prejudiced by counsel's failure to call alibi witness where the evidence was not overwhelming; "This case hinged on whether the jury believed [the defendant] had an alibi or [believed the lone eyewitness's] testimony.").

Order affirmed.

- 11 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>9/15/2020</u>