J-S31019-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SUMO DUKULAH | : | |
| | : | |
| Appellant | : | No. 2172 EDA 2021 |

Appeal from the PCRA Order Entered October 5, 2021
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0007817-2013

BEFORE: BOWES, J., NICHOLS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY NICHOLS, J.: **FILED DECEMBER 19, 2022**

Appellant Sumo Dukulah appeals from the order denying his timely first Post Conviction Relief Act[1] (PCRA) petition. Appellant contends that the PCRA court erred in denying his petition, and he alleges that his trial counsel was ineffective for failing to call a witness, failing to move for a mistrial, and making a factual misstatement relative to medical evidence. After review, we affirm.

The PCRA court summarized the factual background in this matter as follows:

> [The victim, (K.D.),] was born in Liberia, and at the age of seven she immigrated to the United States with . . . Appellant and Sonnie

---

[*] Former Justice specially assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541-9546.

Dukulah [(Sonnie)].[2] Shortly after their arrival, the family settled into a home on Riverside Drive in Philadelphia, PA. [K.D.] testified that from the time she was eight years old until she was sixteen years old, Appellant forced her to have vaginal intercourse with him and that he subjected her to multiple acts of sexual abuse. [K.D.] explained that Appellant's acts of sexual assault and abuse occurred in the family home, most often at a time when [Sonnie] was at work.

[K.D.] described one incident when [Appellant] came into her bedroom and hit her in the head while she was asleep. He asked if she used his computer and she advised him that she used it to do her homework. He then left and went into the bathroom, returning with a wet towel which he wrapped around her mouth. At that point, Appellant removed [K.D.'s] pants and inserted his penis into her vagina. [K.D.] described another occasion while she was in elementary school when [Sonnie] was at home and asleep during which Appellant had vaginal intercourse with [K.D.] on the side of a wall in the house before she left to go to school. [K.D.] testified that at first Appellant did not use a condom during intercourse, but that he later used condoms, and when none were available, he used rubber gloves and plastic bags instead. [K.D.] stated that on multiple occasions, Appellant had oral and anal sexual intercourse with her. [K.D.] said that when [Appellant] inserted his penis into her anus it caused her pain so badly and that she could not walk. [K.D.] described that Appellant also licked her vagina and put his mouth on her breasts.

[K.D.] testified that Appellant threatened that if she ever said anything about the incidents to anyone, he would send her back to Africa. [K.D.] dreaded that she might be returned to Africa, where she would be faced with rejection from all of her family and friends, abject poverty, and be left with the life of a beggar. [K.D.] stated that at one point she threatened to tell [Sonnie] what was happening, and Appellant responded, "go ahead, because she won't believe you."

[K.D.] related that at [Sonnie's] 40th birthday celebration, Appellant was inebriated, and he told [Sonnie] that he had sex

_____

[2] The record reflects that Sonnie is K.D.'s paternal aunt, and Appellant is Sonnie's husband and K.D.'s uncle. The parties stipulated that Sonnie and Appellant raised K.D., and K.D. refers to them as her mother and father. *See* N.T. 3/5/21, at 50–52.

- 2 -

with the child. He said that he thought the person he was having sex with was [Sonnie]. [Sonnie] was enraged and blamed [K.D.]. [Sonnie] demanded that she not report the incident to anyone else, saying that it would be an embarrassment to their family. As of the day of trial, [Sonnie] continues to refuse to speak to [K.D.] and has let [her] know that she wants nothing more to do with her.

At one point, [K.D.] attempted suicide by taking pills, which caused her extreme dizziness. [K.D. walked] to the laundry room in their apartment complex, and when she arrived there the leasing director for the apartment complex, Sophia Edwards, noticed her condition and inquired. Edwards escorted [K.D.] to the property manager's office, and during their discussion [K.D.] told the women that things were happening in her home with [A]ppellant, but she was not specific. [K.D.] testified that she was afraid that the women would call her parents, so she quickly returned home.

Edwards and the property manager nevertheless contacted the anonymous hotline at the Philadelphia Department of Human Services (hereinafter, DHS). Shortly thereafter, a social worker from DHS came to [K.D.'s] home at a time [K.D.], then 13, was home alone and she asked [K.D.] about what was happening with Appellant and the sexual abuse. [K.D.] was fearful that the social worker would contact her parents, and that her parents would send her back to Africa, and she refused to tell Edwards what was actually occurring.

[Y.G.], a close friend and classmate of [K.D.], testified that while walking home from school [K.D.] told her that Appellant was forcing her to have sex with him. [Y.G.] state[d] that on that day, after school, [K.D.] went home and later came to her house saying that Appellant demanded that she return to school to retrieve an iPod that [K.D.] left there. The two young girls went back to the school, however it was after 5:00 P.M.[,] and the school was closed. [K.D.] was panicked and told [Y.G.] that if she did not return home with the iPod[, Appellant] would force her to have sex with him.

[K.D.] then told [Y.G.] that since they first immigrated to the United States Appellant had been forcing her to have vaginal and anal sex, and sexually assaulting her. At the time, [Sonnie] was at work and [K.D.] was afraid that Appellant would rape and assault her again. Two other close friends and classmates, [A.N.]

- 3 -

and [M.N.], were also with [K.D.] and [Y.G.] when [K.D.] related Appellant's crimes.

On April 16, 2013, [K.D.], then in tenth grade, came to school crying and had marks on her body. [K.D.] told [Y.G.] that [Appellant] had beaten her, that she was afraid to return home, and that she was going to commit suicide. [K.D.] stated that she "would rather be dead than to live through this again." [K.D.] told [Y.G.] that Appellant raped her the Sunday before and that she was beaten on the morning of the rape. [Y.G.] reported what [K.D.] told her to one of the deans and a counselor at their high school. Tasha Torres, a social worker at DHS, testified that on April 16, 2013, she was called to [the school] where she met with [K.D.] and her three friends. [K.D.] reported to Torres that from the age of ten, she had been sexually abused by Appellant, that he had been forcing her to have sexual intercourse with him on a regular basis, and that the abuse was ongoing. [K.D.] stated that she told [Sonnie] about the abuse approximately one year prior, and [Sonnie] confronted Appellant, who then told her . . . that it happened once while he was intoxicated and that it was an accident. [K.D.] explained that [Sonnie] became upset with her for allowing the incident to happen. [K.D.] told Torres that she was afraid to return home because Appellant threatened that if she reported the incidents to anyone she would be sent back to Liberia. After reporting the incidents to Torres, DHS obtained an order of protective custody, the Philadelphia Police Special Victims Unit was contacted, and [K.D.] was transported to St. Christopher's Hospital, where she was given a physical examination and a rape kit. [K.D.] was then placed in the custody of [Y.G.'s] mother, where she remains to the present.

Philadelphia Police Officer Daniel Soler testified that on April 16, 2013, he responded to a radio dispatch to St. Christopher's Hospital where he met with [K.D.] and Torres. Soler was informed that [K.D.] reported a rape that occurred on April 14, 2013, that she had been given a physical examination, and that a rape kit had been prepared.

In defense, Appellant presented several witnesses who testified as to Appellant's reputation in the community for being peaceful and law-abiding, and a stipulation was agreed to that other character witnesses would also testify as to Appellant's reputation for being peaceful and law-abiding.

PCRA Ct. Op., 12/22/21, at 3-7 (citations and footnote omitted).

On April 2, 2014, a jury found Appellant guilty of rape, rape of a child, involuntary deviate sexual intercourse (IDSI), unlawful contact with a minor, endangering the welfare of a child, and corruption of minors.[3]  On February 17, 2015, the trial court sentenced Appellant to an aggregate term of thirty-one to sixty-three years of incarceration.  N.T., 2/17/15, at 44-45.  Appellant filed post-sentence motions that the trial court denied on May 21, 2015.  Appellant filed a timely appeal.  This Court affirmed Appellant's judgment of sentence, and our Supreme Court denied Appellant's petition for allowance of appeal on September 11, 2017.  ***Commonwealth v. Dukulah***, 1955 EDA 2015, 2017 WL 1096461 (Pa. Super. filed Mar. 9, 2017) (unpublished mem.), *appeal denied*, 155 EAL 2017, 170 A.3d 1037 (Pa. 2017).

On June 29, 2018, Appellant filed a timely PCRA petition.  On May 21, 2019, and October 1, 2019, the PCRA court held hearings concerning Appellant's claim that Attorney Michael van der Veen, Appellant's trial counsel (trial counsel), was ineffective for failing to call Sonnie as a witness at trial. The PCRA court subsequently continued the hearing to allow Appellant to obtain an interpreter for Sonnie, and the PCRA hearing resumed on March 5, 2021.[4]  On October 5, 2021, the PCRA court issued an order denying

---

[3] 18 Pa.C.S. §§ 3121(a)(1), 3121(c), 3123(a)(1), 6318(a)(1), 4304(a)(1), and 6301(a)(1)(ii) respectively.

[4] The PCRA court noted the difficulties involved with securing an interpreter due to the COVID-19 pandemic and associated closures.   PCRA Ct. Op., 12/22/21, at 1-2.

Appellant's PCRA petition. This timely appeal followed. Both the PCRA court and Appellant complied with Pa.R.A.P. 1925.

On appeal, Appellant presents the following issues:

1. Did the [PCRA] court err by refusing to grant a new trial on [Appellant's] claim that trial counsel was ineffective for failing to call a witness after counsel told the jury in his opening speech that he would do so?

2. Did the [PCRA] court err by refusing to grant relief on [Appellant's] claim that trial counsel was ineffective for making factual misstatements to the jury regarding the medical condition of the victim's hymen?

3. Did the [PCRA] court err by refusing to grant relief on [Appellant's] claim that trial counsel was ineffective for failing to move for a mistrial when a critical prosecution witness testified that in the culture of Liberia, "it is very usual for older men to sexually abuse women"?

Appellant's Brief at 4.

Our standard of review from the denial of a PCRA petition "is limited to examining whether the PCRA court's determination is supported by the evidence of record and whether it is free of legal error." *Commonwealth v. Sandusky*, 203 A.3d 1033, 1043 (Pa. Super. 2019) (citation omitted). "The PCRA court's credibility determinations, when supported by the record, are binding on this Court; however, we apply a *de novo* standard of review to the PCRA court's legal conclusions." *Commonwealth v. Mitchell*, 105 A.3d 1257, 1265 (Pa. 2014) (citation omitted).

Counsel is presumed to be effective. *Commonwealth v. Treiber*, 121 A.3d 435, 445 (Pa. 2015) (citation omitted). To prove a claim of ineffective

assistance of counsel "a defendant must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." *Sandusky*, 203 A.3d at 1043 (some formatting altered). The burden is on the defendant to prove all three of the following prongs: "(1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's action or failure to act; and (3) he suffered prejudice as a result of counsel's error, with prejudice measured by whether there is a reasonable probability the result of the proceeding would have been different." *Treiber*, 121 A.3d at 445 (citation omitted). "Failure to satisfy any prong of the test will result in rejection of the appellant's ineffective assistance of counsel claim." *Commonwealth v. Holt*, 175 A.3d 1014, 1018 (Pa. Super. 2017) (citation omitted). Moreover, counsel will not be deemed ineffective for failing to raise a futile or meritless claim. *See Treiber*, 121 A.3d at 445 (citation omitted); *see also Commonwealth v. Treadwell*, 911 A.2d 987, 991-92 (Pa. Super. 2006).

### Failure to Call Witness

Appellant first contends that trial counsel was ineffective for failing to call Sonnie as a witness. Appellant's Brief at 7-8. Appellant notes that trial counsel told the jury during his opening statement that Sonnie would testify. *See id.* at 8. Appellant argues that Sonnie would have refuted K.D.'s claims, the failure to call Sonnie was unreasonable, and trial counsel's failure to call Sonnie as a witness prejudiced Appellant. *See id.* at 10-19.

The Commonwealth responds that the PCRA court properly denied relief on this claim. The Commonwealth argues that Appellant failed to establish prejudice resulted from trial counsel's decision to not call Sonnie as a witness. Commonwealth's Brief at 10.

When a PCRA petitioner claims counsel was ineffective for failing to call a witness at trial, the petitioner must plead and prove:

> (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

**Commonwealth v. Selenski**, 228 A.3d 8, 16 (Pa. Super. 2020) (citation omitted and formatting altered).

Here, after holding hearings on Appellant's PCRA petition, the PCRA court concluded that Appellant was not entitled to PCRA relief because he had not proven prejudice and failed to establish that trial counsel lacked a reasonable strategic basis for not calling Sonnie as a witness. **See** PCRA Ct. Op., 12/22/21, at 9-10.[5] After review, we conclude that Appellant is due no relief.

_____

[5] Although the PCRA court did not express specific determinations of credibility with respect to Appellant's witnesses at the PCRA hearing, Sonnie and Appellant's trial counsel, Attorney Michael van der Veen, we note that with respect to the alleged failure to call Sonnie as a witness at Appellant's trial, the PCRA court did state as follows: "This claim is belied by the trial record, and with consideration to trial counsel, Michael van der Veen's PCRA
*(Footnote Continued Next Page)*

The record reflects that Sonnie appeared at Appellant's PCRA hearing with an interpreter, and she testified regarding what she would have said if trial counsel had called her as a witness at trial. *See* N.T. 3/5/21, at 16-25, 46-54. The PCRA court found that although some of Sonnie's proposed testimony would have contradicted some of K.D.'s claims, it would have corroborated K.D.'s testimony with respect to the lengthy periods of time that Appellant had "unfettered access to [K.D.]." PCRA Ct. Op., 12/22/21, at 10.[6] Specifically, Sonnie agreed that while she was at work from 3:00 P.M. until 11:00 P.M., Appellant was at the house alone with K.D., and Sonnie conceded that she did not know what occurred while she was not present. N.T., 3/5/21, at 44-46. Additionally, Sonnie repeatedly stated "I don't know about that" when questioned about the allegations against Appellant, the injuries sustained by K.D., and her awareness of what transpired when she was not home. *Id.* at 37, 38, 40, 43, and 46.

With respect to trial counsel's testimony at the PCRA hearing, the PCRA court explained: "[trial counsel] regretted some of his trial strategy, calling

---

testimony, along with that of Sonnie Dukulah. No relief is due." PCRA Ct. Op., 12/22/21, at 8.

[6] The PCRA court further explained: "[Sonnie's] testimony was difficult and confusing to understand (perhaps because of the skills of the interpreter, but confusing nonetheless)." PCRA Ct. Op., 12/22/21, at 9. The PCRA court also stated: "[w]hile [Sonnie's] testimony contradicted some of [K.D.'s] testimony regarding the family interaction and [the] relationship [between Sonnie and K.D.], [Sonnie's] testimony was impeachable, particularly regarding such matters as the involvement of the Department of Human Services." *Id.* at 9-10.

them mistakes, because in his view an innocent man was convicted." PCRA Ct. Op., 12/22/21, at 8. However, the PCRA court also noted that "regret over losing a case does not amount to ineffectiveness." *Id.*; *see also Commonwealth v. Busanet*, 54 A.3d 35, 75 (Pa. 2012) (explaining that merely because a strategy or tactic was unsuccessful does not render trial counsel ineffective). The PCRA court summarized trial counsel's testimony and noted that trial counsel made daily assessments of the prosecution's case, and testified that he believed "we were winning every witness at the end of the day." PCRA Ct. Op., 12/22/21, at 9 (citing N.T., 10/1/19, at 23-24, 57, 73). Trial counsel believed that Appellant was winning because "it was absolutely clear to the jury that [K.D.'s] claim that she was beaten hundreds and hundreds of times with absolutely no mark was absurd." N.T., 10/1/19, at 14. While trial counsel did not recall the explanation, he testified that he had "a myriad of reasons" for not calling Sonnie, and the decision to not call Sonnie was made "once the defense began." PCRA Ct. Op., 12/22/21, at 9 (citing N.T. 10/1/19, at 12-13, 72). Trial counsel testified that he believed the Commonwealth's case against Appellant was weak, and the PCRA court concluded that trial counsel did not want to jeopardize an acquittal and risk "bolstering the case against Appellant with impeachable defense testimony." *Id.* Trial counsel also testified that although he did not remember that he told the jury in his opening statement that Sonnie would testify, he did not forget to call Sonnie as a witness. N.T., 10/1/19, at 13, 72-74. Rather, trial counsel

testified that he had reasons and made the decision not to call Sonnie. *Id.* at 72-74.

As stated previously, the failure to satisfy any prong of the test for ineffective assistance of counsel results in rejection of the claim. *See Holt*, 175 A.3d at 1018. After review, we agree with the PCRA court that Appellant failed to establish a reasonable probability that if Sonnie testified, the outcome of Appellant's trial would have been different. *See Treiber*, 121 A.3d at 445. Further, the record supports the PCRA court's findings that Sonnie's proposed testimony was only corroborative of portions of K.D.'s testimony, and that trial counsel believed that Appellant was winning the trial and did not want to jeopardize the acquittal with impeachable defense testimony. Accordingly, we discern no error in the PCRA court's conclusion that trial counsel had a reasonable basis for declining to call Sonnie as a witness. *See id.* Accordingly, Appellant is not entitled to relief on this claim.

**Factual Misstatements**

Next, Appellant contends that trial counsel was ineffective because in his opening statement to the jury, he said that the medical evidence would not corroborate K.D.'s testimony. Appellant's Brief at 19. Appellant focuses on one aspect of trial counsel's opening where trial counsel asserted that the medical evidence would refute indications of sexual activity because K.D.'s "hymen was still intact." *Id.* (quoting N.T., 3/26/14, at 89). Appellant contends that Appellant was prejudiced by this statement. *Id.* at 20. Further, Appellant argues that the PCRA court abused its discretion in failing to hold a

- 11 -

hearing on this issue. ***See id.*** at 20. After review, we conclude that Appellant

is due no relief.

It is well settled that

[t]here is no absolute right to an evidentiary hearing on a PCRA petition, and if the PCRA court can determine from the record that no genuine issues of material fact exist, then a hearing is not necessary. To obtain reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing.

***Commonwealth v. Maddrey***, 205 A.3d 323, 328 (Pa. Super. 2019) (citations

and quotation marks omitted).

The PCRA court addressed this issue as follows:

Appellant claims ineffectiveness because trial counsel argued that medical evidence suggested that the victim was not sexually assaulted because her hymen was still intact. Trial counsel made this statement while opening to the jury where he attacked the credibility of the child victim bolstered by the lack of physical evidence. The statement was as follows:

The physicians who did a rape kit exam will testify in this trial. What they will tell you is that the rape kit exam and the physical exam shows no signs of sexual abuse or sexual activity. She had no - they examined her vagina and her anus and her mouth. They found no cuts, no tears, no scrapes, no scratches, no bruises, no sign on her vagina or anus of any sexual contact at all. Her hymen was still intact.

At the hospital during the interview, K.D. said that [Appellant] was within - she claimed that a rape happened [two days earlier on] Sunday night while [Sonnie] was at work. And she said that [Appellant], within the week before, had kicked her in the head so violently, so violently that she was left unconscious. In the exam there was no evidence of that at all.

As a result of trial counsel's argument, the Commonwealth sought to elicit expert testimony from Dr. Laura Brennan regarding the significance or lack thereof of an intact hymen on the issue of penetration. After a hearing, the expert testimony was allowed.

During the trial, Dr. Brennan, an attending physician at the Children's Hospital of Philadelphia, an expert in the field of child sexual abuse, testified that a child could have a history of sexual penetration without trauma to the vaginal area or the hymen. On cross-examination, Dr. Brennan acknowledged that the more frequent the penetration the likelihood of a "broken hymen" increased, [but] the extent to which is unknown.

Arguing against the admissibility of the expert's testimony, trial counsel stated:

> Judge, I didn't mislead the jury in any way. I had only indicated what the evidence would be. I spoke to Ms. Hoyler, who did the actual rape kit exam - physical examination to the rape test, and she told me that the hymen was intact. It's also written on the exhibit that Your Honor wouldn't let me blow up, but would be otherwise admissible in its normal form.

> And I didn't mislead the jury in any way. I only stated the fact that - the facts. Nor did I draw a conclusion from it. I stated the fact and I moved on to the other fact. There's no - there were no cuts, no bruises, no lesions, no sign of sex in any way, and her hymen was intact. That's what I said.

Although trial counsel's opening led to the introduction of the Commonwealth's expert, counsel's actions had a reasonable basis and led to the expert's opinion on cross-examination that the frequency of penetration increased the likelihood of a broken hymen. This was helpful testimony to the Appellant, which trial counsel incorporated into his closing argument to the jury. There was no prejudice to the Appellant.

PCRA Ct. Op., 12/22/21, at 10-12 (formatting altered).

After review, we agree with the PCRA court that Appellant failed to meet his burden. The record reflects that trial counsel's statement was made to discredit K.D.'s claims of physical and sexual abuse, and trial counsel

mentioned the medical examination in an effort to illustrate that K.D. went to the hospital within days of an assault but did not have any injuries from the alleged attacks. Additionally, on cross-examination, trial counsel elicited testimony from the Commonwealth's expert noting that with frequent vaginal penetration there was an increased likelihood of a broken hymen, and here, the evidence showed that K.D. did not have a broken hymen. As the PCRA court concluded, there was a reasonable strategic basis for the statement. *See Holt*, 175 A.3d at 1018 (stating "Failure to satisfy any prong of the test will result in rejection of the appellant's ineffective assistance of counsel claim."). The fact that a tactic was ultimately unsuccessful does not render trial counsel ineffective. *See Busanet*, 54 A.3d at 75.

Additionally, we conclude that Appellant failed to establish prejudice. *See Treiber*, 121 A.3d at 445. Appellant argued merely: "trial counsel's misstatement of fact prejudiced [Appellant] because these events affected the trial's outcome. The jury heard expert testimony that harmed the defense's case and would not otherwise have been presented." Appellant's Brief at 20. Boilerplate allegations and bald assertions of prejudice cannot satisfy a petitioner's burden to prove that counsel was ineffective. *See Sandusky*, 203 A.3d at 1044. Further, because there were no issues of material fact that required an evidentiary hearing, we conclude that the PCRA court did not abuse its discretion when it declined to hold a hearing on this claim and no relief is due. *See Maddrey*, 205 A.3d at 328.

## Failure to Request Mistrial

Finally, Appellant contends that trial counsel was ineffective for failing to move for a mistrial after K.D.'s friend, M.N., testified that it was common for men to sexually abuse women in Liberia. Appellant's Brief at 21. Appellant asserts that a cautionary instruction was insufficient to cure prejudice. *Id.* at 21-22. Additionally, Appellant claims the PCRA court abused its discretion when it did not conduct an evidentiary hearing on this issue. *Id.*

It is well settled that juries are presumed to follow the trial court's instructions, and a "trial court's curative instruction is presumed to be sufficient to cure any prejudice to Appellant." *Commonwealth v. Thornton*, 791 A.2d 1190, 1193 (Pa. Super. 2002) (citations omitted).

Here, the PCRA court addressed Appellant's claim as follows:

One of the Commonwealth's disclosure witnesses, M.N., a friend of the victim, K.D., testified [that] "we were worried for [K.D.] I mean, if she's . . . growing up the culture we're in, it's very usual for older men to sexually abuse women." N.T. 3/31/14 at 90-91. Trial counsel's objection was immediate, was sustained, and the jury [was] instructed to disregard it. *Id.*

There was no prejudice to Appellant. Trial counsel cannot be deemed ineffective for failure to move for a mistrial when such extreme relief was unwarranted and would have been futile. Our law is clear that a motion for mistrial, as well as with all questions of evidence and evidentiary rulings, is a matter addressed to the sound discretion of the trial court and must only be granted where the alleged prejudicial event may reasonably be said to have deprived Appellant of a fair and impartial trial. [M.N.'s] limited, unsolicited reference to her culture's alleged sexually abusive older men was fleeting, not specifically directed at Appellant, and the jury was instructed to disregard it after trial counsel's objection.

PCRA Ct. Op., 12/22/21, at 12.

After review, we agree with the PCRA court's conclusion. As noted by the PCRA court, the trial court issued a curative instruction immediately after trial counsel objected to M.N.'s testimony. Because the jury is presumed to have followed the trial court's instructions, we agree with the PCRA court that a mistrial was unwarranted under the circumstances of this case. **See Thornton**, 791 A.2d at 1193. Moreover, there was no reasonable probability that the result of the proceeding would have been different if trial counsel had moved for a mistrial. **See Treiber**, 121 A.3d at 445. Here, the PCRA court was also the trial court judge, and the PCRA court specifically stated in its opinion that a request for a mistrial would have been futile. PCRA Ct. Op., 12/22/21, at 12. As stated previously, counsel will not be deemed ineffective for failing to raise a futile or meritless claim. **See Treiber**, 121 A.3d at 445; **see also Treadwell**, 911 A.2d at 991-92. Finally, because there were no issues of material fact that required an evidentiary hearing, we conclude that the PCRA court did not abuse its discretion when it declined to hold a hearing on this claim and no relief is due. **See Maddrey**, 205 A.3d at 328.

## Conclusion

For these reasons, we conclude that the PCRA court's determinations are supported by the record and that there was no error of law by the PCRA court in denying Appellant's PCRA petition. **See Sandusky**, 203 A.3d at 1043; **Treiber**, 121 A.3d at 445. Accordingly, we affirm the PCRA court's order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/19/2022