J-S39024-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LEWIS T. WATKINS | : | |
| | : | |
| Appellant | : | No. 810 MDA 2022 |

Appeal from the PCRA Order Entered May 16, 2022
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s): CP-36-CR-0006151-2016

BEFORE: PANELLA, P.J., BENDER, P.J.E., and NICHOLS, J.

MEMORANDUM BY BENDER, P.J.E.: **FILED MARCH 09, 2023**

Appellant, Lewis T. Watkins, appeals from the May 16, 2022 order denying his timely-filed petition under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546. Appellant presents one claim of ineffective assistance of counsel (IAC). After careful review, we affirm.

This Court previously summarized the facts and procedural history of Appellant's case, as follows:

> [O]n April 17, 2012, Appellant was employed at Alcoa when he was involved in an accident. Alcoa tested Appellant for drugs, and he tested positive for marijuana and cocaine. As a result, Alcoa sent Appellant to a pre-paid drug rehabilitation facility. As a condition of entering the drug rehabilitation facility, Appellant signed a release that prevented the facility from disclosing copies of Appellant's laboratory results, including urine tests, to Alcoa. The facility, however, expelled Appellant on June 20, 2012, because he failed to comply with the requirements for treatment. The facility advised Alcoa that Appellant missed several treatment sessions, exhibited signs of intoxication,

and had two positive urine tests. As a result, Alcoa fired Appellant on June 20, 2012.

Subsequently, Appellant contacted Alcoa and requested copies of his personnel and medical file, as well as copies of the laboratory results. Alcoa provided Appellant's personnel and medical file but because of Appellant's signed release, it never possessed the laboratory results.

In 2015, the police charged Appellant with stalking Thomas Holbert, one of Alcoa's human resource managers. A trial was held on September 26th and 27th, 2016, and Appellant was found not guilty. …

Immediately following the not-guilty verdict in September of 2016, Appellant began leaving numerous voicemails on Holbert's work mobile phone demanding Appellant's full personnel file, including the laboratory results. Over time, Appellant's voicemails became increasingly belligerent and intimidating, and they included threats to personally appear at Holbert's home and workplace to obtain his personnel file and advice to Holbert about how to improve the parking of his car at work. … The numerous voicemails caused Holbert to change his phone number, install a burglar alarm, close his blinds, and alter his daily routine.

Also in September and October of 2016, Appellant began leaving "intimidating" voicemails to Tracey Hustad, one of Alcoa's human resources directors, requesting Alcoa to provide the laboratory results. Hustad consistently responded that Alcoa could not produce the results because it never had them. [A]ll voicemails were forwarded to Alcoa security.

Brian Leadbetter, chief security officer for Alcoa, … informed Appellant that Alcoa did not have the laboratory reports at issue. On October 10, 2016, after verifying Appellant's address and email address, Alcoa sent a cease-and-desist letter meticulously detailing Appellant's behavior, enclosing another copy of Appellant's personnel and medical files, and again denying any possession of any laboratory test results. Alcoa sent the files via FedEx, but Appellant refused to sign and receive the package. Alcoa reported Appellant's activities to the police, and the police arrested Appellant on October 24, 2016.

***Commonwealth v. Watkins***, [No. 340 MDA 2018, unpublished memorandum at *1-2] (Pa. Super. [filed Nov. 6,] 2018) … (citations and footnotes omitted).  Upon receiving evidence of the above, a jury convicted Appellant of stalking and terroristic threats.  The trial court sentenced Appellant to an aggregate term of three to ten years of incarceration, and this Court affirmed the judgment of sentence on direct appeal.  ***See id.***

In March 2019, Appellant filed a timely[,] *pro se* PCRA petition, and counsel was appointed.  Counsel filed an amended petition raising one claim of ineffective assistance of trial counsel.  Specifically, the amended petition averred that trial counsel was ineffective in failing to seek to exclude as unduly prejudicial the evidence of Appellant's illegal drug activities and termination by Alcoa upon his failure to complete rehabilitation, or to even request a cautionary instruction to advise the jury of the limited purpose of its introduction.  ***See*** Amended PCRA Petition, 6/18/19, at 11 (citing Pa. SSJI (Crim) § 3.08[1]).  Appellant noted that, in the Commonwealth's pretrial motion to introduce evidence of Appellant's cocaine and marijuana use and the reason for his termination, even it acknowledged "an appropriate limiting instruction" may be warranted.  ***Id.*** at 11-12 (quoting Notice of Intention to Introduce Evidence of Other Crimes, Wrongs or Acts, 6/19/17, at ¶ 8).  Yet, Appellant complained, counsel did not file a motion *in limine* to exclude the evidence as unduly prejudicial, did not object to its admission, did not seek a limiting instruction before or immediately after it was admitted, and did not seek a limiting instruction in the final jury charge.  ***Id.*** at 12.  Additionally, Appellant's petition alleged that trial counsel had no reasonable basis for failing to take any of those actions, and that he was prejudiced because his prior bad acts caused the jury to infer that he was a man of criminal tendencies and acted in accordance therewith.  ***Id.*** at 12-13.  Appellant further requested an evidentiary hearing to develop a record of counsel's failure to act, and listed trial counsel as a witness.  ***Id.*** at 14-15.

[1] The standard suggested jury instruction provides:

> This evidence is before you for a limited purpose, that is, for the purpose of tending to [give specifics].  This evidence must not be considered by you in any way other than for the purpose I just stated.  You must not regard this evidence as showing that the defendant is a person of bad character or criminal tendencies from which you might be inclined to infer guilt.

Pa. SSJI (Crim) § 3.08.

The Commonwealth filed an answer to the amended petition contending that trial counsel had not been ineffective. The Commonwealth maintained that the information was admissible because it was necessary to provide the jury with context and an understanding of the development of events. *See* Answer to Amended Petition, 9/3/19, at 5. Further, the Commonwealth suggested that Appellant suffered no prejudice—since the other bad acts about which the jury heard "looked nothing like the crimes for which [Appellant] was charged and tried," it would have reached the same verdict regardless. *Id.* at 6.

The PCRA court issued notice of its intent to dismiss Appellant's petition without a hearing pursuant to Pa.R.Crim.P. 907. Following the resolution of some apparent filing irregularities, the PCRA court dismissed the petition by order entered March 5, 2020. Appellant filed a timely notice of appeal. The PCRA court did not order Appellant to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal, but did submit its prior opinion to satisfy its obligation under Pa.R.A.P. 1925(a).

*Commonwealth v. Watkins*, 470 MDA 2020, unpublished memorandum at

*1-5 (Pa. Super. filed Jan. 20, 2021) (some footnotes omitted).

In Appellant's initial appeal from the denial of his PCRA petition, he argued that this Court should remand for a hearing on his ineffectiveness claim. We agreed. Initially, we recognized:

"The standard of review of an order dismissing a PCRA petition is whether that determination is supported by the evidence of record and is free of legal error." *Commonwealth v. Weimer*, 167 A.3d 78, 81 (Pa. Super. 2017). "[A] PCRA court has discretion to dismiss a PCRA petition without a hearing if the court is satisfied that there are no genuine issues concerning any material fact; that the defendant is not entitled to post-conviction collateral relief; and that no legitimate purpose would be served by further proceedings." *Commonwealth v. Cruz*, 223 A.3d 274, 277 (Pa. Super. 2019) (internal quotation marks omitted). Further, "[i]t is an appellant's burden to persuade us that the PCRA court erred and that relief is due." *Commonwealth v. Stansbury*, 219 A.3d 157, 161 (Pa. Super. 2019) (internal quotation marks omitted).

Counsel is presumed to be effective, and a PCRA petitioner bears the burden of proving otherwise. *See, e.g.*, *Commonwealth v. Becker*, 192 A.3d 106, 112 (Pa. Super. 2018). To do so, the petitioner must plead and prove: "(1) the underlying legal claim is of arguable merit; (2) counsel's action or inaction lacked any objectively reasonable basis designed to effectuate his client's interest; and (3) prejudice, to the effect that there was a reasonable probability of a different outcome at trial if not for counsel's error." *Commonwealth v. Selenski*, 228 A.3d 8, 15 (Pa. Super. 2020) (internal quotation marks omitted). The failure to establish any prong is fatal to the claim. *Id.* at 15.

As for the arguable merit of Appellant's claim, we observe that evidence of a defendant's prior criminal activity is inadmissible to demonstrate his bad character or criminal propensity. The same evidence may be admissible for various legitimate purposes, however, provided that its probative value outweighs the prejudicial effect likely to result from its admission, and an appropriate limiting instruction is given. *Commonwealth v. Paddy*, 800 A.2d 294, 307 (Pa. 2002) (citations omitted). *See also* Pa.R.E. 404(b). One such legitimate purpose "is where such evidence was part of the chain or sequence of events which became part of the history of the case and formed part of the natural development of the facts." *Commonwealth v. Lark*, 543 A.2d 491, 497 (Pa. 1988).

> This special circumstance, sometimes referred to as the "*res gestae*" exception to the general proscription against evidence of other crimes, is also known as the "complete story" rationale, *i.e.*, evidence of other criminal acts is admissible "to complete the story of the crime on trial by proving its immediate context of happenings near in time and place."

*Id.* (citations omitted).

*Watkins*, No. 470 MDA 2020, unpublished memorandum at *5-7.

We concurred with Appellant that he had established arguable merit to his underlying claim that his attorney should have requested a cautionary

instruction regarding the prior bad acts evidence that was admitted.[1] ***See id.*** at *9-10 (citing ***Commonwealth v. Webb***, 236 A.3d 1170, 1179 (Pa. Super. 2020) ("Where evidence of prior bad acts is admitted, the defendant is entitled to a jury instruction that the evidence is admissible only for a limited purpose.")).   However, we found that we could not properly assess the remaining two prongs of the ineffectiveness test because "[t]he record [was] devoid of counsel's reasons for opting to forego a request for a limiting instruction[,]" ***id.*** at *10, and because the PCRA court had "offered no analysis of the prejudice prong of Appellant's limiting-instruction claim."  ***Id.*** at *12. Accordingly, we vacated the order denying Appellant's petition, and remanded for the PCRA court to further consider all three prongs of his ineffectiveness claim.  ***Id.***

On remand, the PCRA court conducted an evidentiary hearing on May 28, 2021.  There, Appellant's trial counsel, Elizabeth A. Low, Esq., was the sole witness.  On May 13, 2022, the PCRA court issued an order, as well as an accompanying opinion, again denying Appellant's petition.  He filed a timely notice of appeal.  Herein, Appellant states one issue for our review:

> I.   The Commonwealth relied on prior-bad-acts evidence at trial.  [Appellant's] trial counsel failed to request a limiting instruction.  She thought the limiting instruction would limit her ability to challenge the credibility of the prior-bad-acts evidence.  She was wrong.  As a result, the trial court issued no instruction limiting the jury's use of evidence that his employer fired him for cocaine use, he failed two other drug

---

[1] Appellant abandoned his claim that his trial counsel should have sought to exclude the *res gestae* evidence.  ***See id.*** at *8.

tests, and he got kicked out of rehab. Did [counsel] render ineffective assistance?

Appellant's Brief at 4.

In reviewing Appellant's claim, we apply the same standard of review and legal principles that we utilized in his original appeal in this case, set forth *supra*. **See Watkins**, No. 470 MDA 2020, unpublished memorandum at *5-7. This Court already discerned that Appellant's ineffectiveness claim has arguable merit. **See id.** at *9-10. Therefore, we now assess whether Appellant has demonstrated the reasonable-basis and prejudice prongs of the ineffectiveness test.

First, regarding the reasonable basis prong, our Supreme Court has declared that,

> generally, where matters of strategy and tactics are concerned, counsel's assistance is deemed constitutionally effective if he chose a particular course that had some reasonable basis designed to effectuate his client's interests. Courts should not deem counsel's strategy or tactic unreasonable unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued.

**Commonwealth v. Koehler**, 36 A.3d 121, 132 (Pa. 2012) (cleaned up).

In this case, Appellant insists that Attorney Low lacked a reasonable basis for her failure to request the limiting instruction set forth in standard suggested jury instruction 3.08. According to Appellant, counsel erroneously believed "that a limiting instruction would have limited her ability to present the defense theory…." Appellant's Brief at 18. He explains that,

> [t]he defense strategy at trial was to contest [his] intent. [Attorney Low] planned to establish that he intended to get the lab results from the failed drug tests that his employer said it used

- 7 -

as a basis to fire him. If the jury believed that, it would find him not guilty because each at-issue crime required an intent to terrorize or place the employer's officers in reasonable fear of bodily injury.

[Attorney Low] feared that the jury could not consider the defense theory if the trial court issued a limiting instruction. She wanted the jury to "consider the drug screens and the indication by [Appellant] that there were no drug screens[.]" N.T. [Trial,] 5/28/21[,] at 22. She said the fight over whether [Appellant] had actually failed the two additional drug tests was "woven into our defense strategy" and that she "wanted the jury to consider [Appellant's] position." [*Id.*] at 26. She conceded, though, that the instruction would not have prevented the jury from finding that [Appellant] intended to get the supposed test results and returning a not-guilty verdict. *Id.*; *id.* at 28-29.

*Id.* at 16.

Appellant misconstrues counsel's testimony at the PCRA hearing and the basis for her decision not to request the at-issue jury instruction. At the PCRA hearing, Attorney Low testified that she and Appellant discussed his trial strategy and agreed that his defense would be that he lacked the requisite intent to commit terroristic threats and stalking. N.T. PCRA Hearing, 5/28/21, at 17-18. She and Appellant discussed his decision to testify at trial, and he made it clear that he wanted to testify that he was wrongfully terminated by Alcoa based on drug screens that "didn't exist[.]" *Id.* at 19, 20-21. Counsel testified that she did not object to the admission of the evidence concerning Appellant's prior bad acts of failing two drug tests and being terminated by Alcoa because it furthered his defense that his intent in calling Alcoa's

employees was to obtain the records of those drug tests, not to terrorize or cause them fear.[2]

In regard to why she did not request a limiting jury instruction regarding the prior bad acts evidence, Attorney Low first testified as follows:

Q[:] Were you aware of the possibility that you could request a limiting instruction to be given to the jury?

[Attorney Low:] Sure.

Q[:] Specifically, you had already received notice of the 404(b) [evidence being admitted]?

[Attorney Low:] Yes.

Q[:] I apologize if you testified to this already: You are familiar with [the] 3.08 [standard jury instruction]?

[Attorney Low:] Yes.

*** 

Q[:] … [T]he Judge [could] limit[] the jury to considering the evidence as a complete story and … not … for anything else?

_____

[2] Thus, at trial, Appellant testified that after the accident at Alcoa, he had to take a drug test, which came back positive for marijuana and cocaine. *See* N.T. Trial, 6/27/17, at 165. Appellant did not dispute the validity of that test. At that point, he was sent to an out-patient rehabilitation facility. *Id.* at 166. During his time at the facility, he was subject to random drug tests. *Id.* Subsequently, Appellant was notified in writing that he was being terminated based on two failed drug tests taken on May 16th and May 30th of 2012. *Id.* at 167. Appellant claimed that he had not taken drug tests on either of those dates, and thus he disputed the validity of the basis for his termination. *Id.* at 167-68. Appellant testified that he immediately, and repeatedly, attempted to obtain the lab results from those ostensible drug tests, but both Alcoa and the rehabilitation facility refused to provide him with those records. *Id.* at 168-71. He claimed that his calls and messages to Thomas Holbert and Tracey Hustad were made with the singular intent of getting the records of the purported drug tests that he allegedly failed. *Id.* at 175.

[Attorney Low:] Yes.

Q[:] Did you believe that the [c]ourt[']s] issuing that limiting instruction would remove your ability to present evidence in defense of the intent?

[Attorney Low:] Yes.

Q[:] **Specifically, [the jury] couldn't consider the drug screens and the indication by [Appellant] that there were no drug screens, they couldn't consider that argument that he was fixated on getting those?**

[Attorney Low:] **Correct.**

Q[:] Did you weigh the benefits of requesting a limiting instruction against the benefit of having the jury consider that information, the drug use, the reported positive test, unsuccessful discharge and termination?

[Attorney Low:] Yes.

Q[:] Did you believe having the jury consider whether [Appellant's] story that there was no positive drug test, he wasn't unsuccessfully discharged, did you believe having the jury consider those was beneficial to [Appellant]?

[Attorney Low:] Yes.

Q[:] **Your strategy was it was more beneficial for the jury to consider those in defense of the intent element rather than address it, having them not being able to consider it?**

[Attorney Low:] **Correct.**

Q[:] All of the drug screens at [the rehabilitation facility], the unsuccessful discharge, and termination, all of those were contested by [Appellant]?

[Attorney Low:] Yes.

Q[:]  He addressed that in his direct examination?

[Attorney Low:] He did, yes.

Q[:] Was it consistent with your trial strategy to show [Appellant] was fixated on the idea that Alcoa was lying and was trying to fire him?

[Attorney Low:] Yes.

Q[:] That caused his preoccupation and repeated contact with the employees of Alcoa?

[Attorney Low:] Correct.

Q[:] Did you further your strategy by saying that his intent to contact was not to cause distress, but to get those records?

[Attorney Low:] Yes.

Q[:] That was consistent with what he was saying in the voicemails that were played to the jury?

[Attorney Low:] Yes.

Q[:] Throughout the entire trial, you carried that strategy?

[Attorney Low:] Yes.

Q[:] This was a strategy in order to assert that [Appellant's] intent was not to cause emotional duress or terror. You had to concede, yes, he was terminated from Alcoa; that the reason Alcoa gave for termination was based on alleged drug use, but that [Appellant] refutes there is any evidence on the use of those drugs and his sole focus was contacting Alcoa employees to get to that truth?

[Attorney Low:] Yes.

Q[:] Was he on board with that strategy?

[Attorney Low:] Yes.

*Id.* at 21-24 (emphasis added).

This testimony — especially that which we emphasized — shows that Attorney Low did not request a limiting jury instruction because she worried that the jury would not consider the prior-bad-acts evidence in determining if Appellant possessed the requisite intent to commit the charged offenses of terroristic threats and stalking. In other words, as the PCRA court determined, Attorney Low "did not request a limiting instruction to avoid inadvertently

precluding the jury [from] considering that evidence as a part of the defense." PCRA Court Opinion (PCO), 5/13/22, at 7 (citation to the record omitted). We further agree with the PCRA court that Attorney Low established a reasonable strategic basis for not requesting the instruction. *Id.* at 8.

As set forth, *supra*, the at-issue jury instruction provides:

This evidence is before you for a limited purpose, that is, for the purpose of tending to [give specifics]. **This evidence must not be considered by you in any way other than for the purpose I just stated.** You must not regard this evidence as showing that the defendant is a person of bad character or criminal tendencies from which you might be inclined to infer guilt.

Pa. SSJI (Crim) § 3.08 (emphasis added). Given that this instruction explicitly directs the jury to **only** consider the prior-bad-acts evidence for the limited purpose for which it was admitted — here, to complete the story of the crimes for which Appellant was on trial — Attorney Low reasonably feared that such an instruction would preclude the jury from considering the prior-bad-acts evidence in assessing Appellant's **intent** in contacting Alcoa's employees. Appellant offers no alternative or amended instruction that counsel could have requested to avoid this potential issue. As such, the record supports the PCRA court's conclusion that Attorney Low expressed a reasonable basis for not seeking to have the standard jury instruction on prior-bad-acts evidence provided in this case.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>03/09/2023</u>