J-S38005-22
J-S38006-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| ANTHONY MINNICK | : | |
| Appellant | : | No. 841 EDA 2021 |

Appeal from the PCRA Order Entered March 12, 2021
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0013411-2012

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| ANTHONY MINNICK | : | |
| Appellant | : | No. 842 EDA 2021 |

Appeal from the PCRA Order Entered March 12, 2021
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0013417-2012

BEFORE:  KUNSELMAN, J., MURRAY, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.: **FILED MAY 18, 2023**

Anthony Minnick ("Minnick") appeals from the order dismissing his first

petition filed pursuant to the Post Conviction Relief Act ("PCRA").[1]  We affirm.

---

[1] **See** 42 Pa.C.S.A. §§ 9541-9546.  We have consolidated the appeals at J-S38005-22 and J-S38006-22 for disposition.  The notices of appeal transmitted to this Court establish that Minnick filed separate appeals at each docket.  **Cf**. **Commonwealth v. Walker**, 185 A.3d 969, 977 (Pa. 2018).  We note, however, that the only document included in the certified record at
*(Footnote Continued Next Page)*

The trial court provided the following summary of the factual background to Minnick's convictions for attempting to kill the victim, Demetrius Pittard, on two separate occasions:

### 1. The August 25, 2009, Shooting Of Demetrius Pittard

. . . On the afternoon of August 25, 2009, Pittard met [Minnick] at Angela Pressley's house. Pittard showed [Minnick] and Pressley how to package up drugs, including how to cut it up and package it for sale. Thirty minutes later, Pittard and [Minnick] left Pressley's house. Pittard and [Minnick] stashed their drugs on different sides of Henley Street and went their separate ways.

Two hours later, [Minnick] called Pittard and told him that his stash was gone. They went to the stash location on Henley Street but were unable to find [Minnick's] stash. Pittard believed a person known as "Dolla" took the drugs. [Minnick] left Pittard, but came back to Pittard a short time later. They walked to a bar at Wayne Avenue but left because the bar was empty. They left the bar through a back door, cut through a dark parking lot and turned at the corner of Knox and Logan Streets. At the corner, Pittard noticed a van that pulled up and flicked its lights on and off.

As Pittard turned from looking at the van to looking at [Minnick], [Minnick] cocked his handgun and started shooting at Pittard who was only six feet from [Minnick]. [Minnick] shot Pittard in both arms. Pittard turned to run after [Minnick] shot at him. As he turned to run, [Minnick] shot Pittard in the head. [Minnick] continued shooting at Pittard as he ran away from him. Pittard was able to run away from [Minnick] until he was shot in the leg and then the spine. Pittard fell to the ground due to these injuries. Pittard could not move or use his hands or legs. [Minnick] came over to Pittard and continued shooting at his neck and head until he ran out of bullets. [Minnick] put his gun against Pittard's head and kept pulling the trigger on the gun, which only

_____

docket 13417 of 2012 is a PCRA court opinion dated August 13, 2021. Because we are unable to confirm whether Minnick and the PCRA court separately filed documents at both dockets, we will refer to those filings in the singular.

made clicking sounds. [Minnick] then ran from Pittard and jumped into the van that Pittard saw earlier at the corner.

When police officers arrived on the scene, they asked Pittard who shot him. Pittard told them that "Ant Man" shot him. He told the police officers because "[i]t's better to be a dead witness than a live one."[2] Pittard passed out on the street and later woke up at Temple University [H]ospital surrounded by his family. Pittard told his family what happened including that "Ant Man" shot him. When the detectives arrived to Pittard's room, he asked them what they can do for his family if he cooperated. According to Pittard, the detectives got "vulgar" with him in response to his question. Pittard testified that he "wanted to get [the detectives] out of his face" so he denied that he told his mother that it was "Ant Man" who shot him; instead, he told the detectives that he told his mother that he "can't man." In other words, he cannot identify the shooter.

[Minnick] and the Commonwealth stipulated that Pittard suffered a total of 13 gunshot wounds from the August 29, 2009 shooting including gunshot injuries to his neck, face, spine, left groin, right thigh area, right posterior thigh and left posterior elbow. One of the bullets remains lodged in his spine. Pittard had several surgeries including putting a plate in [his] face. He suffers permanent nerve damage from the shooting. [Minnick] and the Commonwealth also stipulated that all ten fired cartridge casings were of .380 caliber and that six of the ten casings were fired from the same gun.

2. The August 2, 2012, Shooting Of Demetrius Pittard, John Cox, And Sadir Spivey

On August 2, 2012, Pittard borrowed his cousin's car around 4:00pm to run a few errands with his friend John Cox . . . and his cousin's three year old son Sadir Spivey. Pittard was driving the car with Cox sitting in the front passenger seat and Spivey sitting

---

[2] Former police officers Mark Williams ("Williams") and James Venziale ("Venziale") first responded to the scene of the 2009 shooting, but a third officer, who testified at Minnick's trial, arrived shortly after them and heard parts of the conversation between Pittard and Officer Venziale. *See* N.T., 12/10/13, at 60-61. Williams and Venziale were arrested in 2010 for their involvement in a scheme to rob drug dealers. At the time of Minnick's trial, they were in federal custody. *See id*. at 138.

- 3 -

in the rear passenger seat. Pittard drove the car to a Sunoco gas station at 100 West Queen Lane, Philadelphia. As Cox started to pump gas, Pittard remained in the driver's seat and started to change into the clothes that he bought earlier that day. As he was putting on his shirt, Pittard observed a red Cadillac pull up on the other side of the gas pump. [Minnick] was hanging out of the front passenger window of the Cadillac. Pittard was able to observe [Minnick's] face for a few seconds as the Cadillac drove by. [Minnick] fired several shots at Pittard and his car but no one was hit by the bullets. At trial, Pittard testified consistently with three videos of the shooting that were shown to the jury.

Pittard gave a statement to detectives at 8:30pm on the same day he was shot. In that statement, Pittard did not tell the detectives who shot at him.

3. Pittard Has A Change Of Heart And Identifies [Minnick] As The Shooter In Both The August 25, 2009, Shooting And The August 2, 2012, Shooting

A day later, on August 3, 2012, Pittard gave a second statement to detectives where he "told them the truth [about the shooting] at the gas station" and identified [Minnick] as the person who shot at him on August 2, 2012. Pittard also identified [Minnick] in a photo array as the shooter in the August 2, 2012 shooting.

At trial, Pittard testified that [he] decided to identify [Minnick] as the shooter in the second statement because "[m]y family came to me and said you need to stop and need this to be over." He explained to the jury that he had a change of heart because he didn't "want to die or get shot again. I'm already messed up." Pittard admitted to the jury that he lied to detectives in his first statement because he "didn't want to be a snitch or do anything to [his] family." He explained, "If you tell on somebody, you can't stay in that neighborhood or somebody might harm you and your family. If you're in the same neighborhood, it is not good for you or your family."

Following his identification of [Minnick] as the shooter in the August 2, 2012, shooting, detectives interviewed Pittard regarding the August 25, 2009, shooting. During that interview, Pittard identified [Minnick] as the shooter in the August 25, 2009, shooting after the detectives agreed to do "something" for his

family, *i.e.*, they moved Pittard and his family out of his neighborhood.

As a result of identifying [Minnick] as the shooter in both shootings, Pittard considers himself as a "snitch" and a "rat." He testified that his "life is still in danger today" and that he is concerned for his family.

Trial Court Opinion, 11/4/14, at 2-5 (citations to the record and footnotes omitted). The Commonwealth separately charged Minnick for the 2009 and 2012 shootings, and Minnick's privately retained trial counsel ("trial counsel") entered his appearance. In 2013, the trial court consolidated the cases.

At the conclusion of the consolidated trial in 2014, a jury found Minnick guilty of two counts of attempted murder, four counts of aggravated assault, and related offenses. The trial court sentenced Minnick to an aggregate sentence of forty to eighty years of imprisonment. Minnick appealed, and in April 2016, this Court affirmed his convictions, corrected an illegal sentence, and amended the aggregate sentence to thirty to sixty years in prison. ***See Commonwealth v. Minnick***, 905 EDA 2014 (Pa. Super. 2016) (unpublished memorandum at 12-13). Minnick did not seek allowance of appeal in our Supreme Court.

Minnick timely filed a *pro se* PCRA petition listing both criminal dockets. Privately retained counsel, Lloyd Long, Esq. ("Attorney Long"), amended Minnick's petition alleging trial counsel's ineffectiveness for: opening the door to evidence of threats against Pittard; failing to object to testimony that word had spread that Minnick was the shooter; opening the door to evidence that police received anonymous tips identifying Minnick as the shooter; and failing

to request a mistrial when Cox, a witness to the second shooting, testified that he identified Minnick from a photo array based on what he heard Minnick looked like. The PCRA court issued a Pa.R.Crim.P. 907 notice of its intent to dismiss the petition for lack of merit.

Minnick retained new counsel, Todd Mosser, Esq. ("Attorney Mosser"), who filed a second amended petition alleging that trial counsel was ineffective for deficiently examining an alibi witness, Alberta Williams, at trial, and for failing to call another alibi witness, Kimberly Cooper. The PCRA court issued a new Rule 907 notice of its intent to dismiss that petition as meritless, and at a conference in open court, the court dismissed the petition on March 12, 2021.

Attorney Mosser appealed on April 21, 2021, more than thirty days after the dismissal of Minnick's PCRA petition. Attorney Mosser attached an email from the clerk of the court dated April 5, 2021, notifying him of the entry of the order dismissing Minnick's PCRA petition. Attorney Mosser then filed an untimely Pa.R.A.P. 1925(b) statement and subsequently filed an application to withdraw from representation in this Court. This Court granted Attorney Mosser's application to withdraw and remanded the matter for the PCRA court to appoint new counsel or permit Minnick to retain new counsel. Minnick retained Michael Wiseman, Esq. ("present counsel"), who filed in this Court a petition for remand to file an amended Rule 1925(b) statement. This Court granted Minnick's petition for remand, and present counsel filed an amended

Rule 1925(b) statement alleging several claims that Attorneys Long and Mosser (collectively, "prior PCRA counsel") were ineffective. *See* Amended Rule 1925(b) Statement, 10/19/21.[3]

The PCRA court filed a Rule 1925(a) opinion noting, in relevant part, that Minnick's claims of prior PCRA counsel's ineffectiveness were "wholly undeveloped." PCRA Court Opinion, 5/6/22, at 4-5 (unnumbered). Alternatively, the trial court found the claims of prior PCRA counsel's ineffectiveness did not merit relief. *See id*. at 5-6.

Minnick raises the following issues for our review:

1. Was the late notice of appeal filed in this case due to a breakdown in the court process or other non-negligent reasons?

2. Was [Minnick] denied effective assistance of . . . PCRA counsel?

3. Is remand appropriate to permit [Minnick] to present the claims that [prior PCRA counsel] ineffectively failed to present?

Minnick's Brief at 1-2.

In his first issue, Minnick argues that this Court should not quash this appeal due to his facially untimely notice of appeal. Because the timeliness of an appeal implicates this Court's jurisdiction, we must determine whether the appeal is properly before this Court. *See Commonwealth v. Green*, 862 A.2d 613, 615 (Pa. Super. 2004) (*en banc*); *see also* Pa.R.A.P. 903(a)

---

[3] This Court also issued a rule to show cause why the appeals should not be quashed as untimely, and upon Minnick's response, discharged the rule to show cause and referred the issue to the merits panel.

(establishing general rule that appeal must be filed with thirty days of entry of order from which appeal is taken).

Pennsylvania Rule of Criminal Procedure 907 states that when the PCRA court dismisses a petition without a hearing, "the judge promptly shall issue an order," and serve "the defendant by certified mail, return receipt requested, of the right to appeal from the final order disposing of the petition and of the time limits within which the appeal must be filed." Pa.R.Crim.P. 907(4). The rule further requires that the order shall be filed and served as provided in Pa.R.Crim.P. 114, the latter of which requires the clerk of the court's office to docket the date of service of the order. *See id*.; *see also* Pa.R.Crim.P. 114(C)(2)(c). The failure to comply with Rules 907(4) and 114 constitute a breakdown in the operation of courts excusing the untimely filing on an appeal. *See Commonwealth v. Midgley*, --- A.3d ---, ---, 2023 WL 1793570, at *4 (Pa. Super. Feb. 7, 2023).

Here, the appeal inventory and dockets show that after announcing the dismissal of the petition in open court, the PCRA court issued an order dismissing Minnick's first PCRA petition. The clerk of the court's office, however, did not enter a notation of the date of service as Rules 907 and 114 require. Thus, we conclude a breakdown in the operation of the court occurred, and we will not quash these appeals as untimely. *See Midgley*, 2023 WL 1793570, at *4 (declining to quash an appeal based on defects in the PCRA court's docket).

Minnick, in his second and third issues, claims that **Commonwealth v. Bradley**, 261 A.3d 381 (Pa. 2021), requires a remand to consider his claims of prior PCRA counsels' ineffectiveness.[4]  Our standard for reviewing the dismissal of a PCRA petition is well-settled:

> This Court analyzes PCRA appeals in the light most favorable to the prevailing party at the PCRA level.  Our review is limited to the findings of the PCRA court and the evidence of record and we do not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error.  Similarly, we grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record.  However, we afford no such deference to its legal conclusions.  Where the petitioner raises questions of law, our standard of review is *de novo* and our scope of review is plenary.  Finally, we may affirm a PCRA court's decision on any grounds if the record supports it.

**Commonwealth v. Selenski**, 228 A.3d 8, 15 (Pa. Super. 2020) (internal citation omitted).

A claim of ineffective assistance of counsel requires a petitioner to establish that: (1) the underlying issue has arguable merit, (2) counsel's actions or inactions lacked a reasonable basis; and (3) counsel's actions or inactions resulted in actual prejudice.  **See Commonwealth v. Chmiel**, 30 A.3d 1111, 1127 (Pa. 2011).  A layered ineffectiveness claim requires the petitioner to properly establish each prong of the three-prong ineffectiveness

---

[4] We note with disapproval that Minnick combines his second and third issues on appeal in a single argument section in his brief.  **See** Minnick's Brief at 9-18; **see also** Pa.R.A.P. 2119(a) (requiring that "the argument . . . be divided into as many parts as there are questions to be argued").  However, because these issues are related to the proper application of **Bradley**, we will address them together.

test for each separate attorney. *See id*. The critical inquiry in assessing a layered claim of ineffectiveness is whether the earlier attorney whose ineffectiveness is being asserted was, in fact, ineffective. If there is no merit to the claim of the earlier counsel's ineffectiveness, then all subsequent counsel cannot be held ineffective for failing to raise and preserve a meritless claim. *See id*. at 1128.

In **Bradley**, our Supreme Court held that a PCRA petitioner may "after a PCRA court denies relief, and after obtaining new counsel or acting *pro se*, raise claims of PCRA counsel's ineffectiveness at the first opportunity to do so, even if on appeal." *See Bradley*, 261 A.3d at 401. The **Bradley** Court provided the following guidance for considering claims of PCRA counsel's ineffectiveness:

> In some instances, the record before the appellate court will be sufficient to allow for disposition of any newly-raised ineffectiveness claims. However, in other cases, the appellate court may need to remand to the PCRA court for further development of the record and for the PCRA court to consider such claims as an initial matter. Consistent with our prior case law, to advance a request for remand, a petition would be required to provide more than mere boilerplate assertions of PCRA counsel's ineffectiveness; however, where there are material facts at issue concerning claims challenging counsel's stewardship and relief is not plainly unavailable as a matter of law, the remand should be afforded.

*Id*. at 402 (internal citations, quotations, footnote, and brackets omitted). An appellate court may decline to consider "mere boilerplate assertions" of PCRA counsel's ineffectiveness, grant or deny relief on straightforward claims, or

- 10 -

remand when there are material issues of fact that the petitioner may be entitled to relief. *See id*. at 402-03.

Minnick contends that he provided more than mere boilerplate assertions of prior PCRA counsel's ineffectiveness and there are issues of material fact which require a remand.[5] *See* Minnick's Brief at 14-15. He contends that he alleged that prior PCRA counsel were ineffective for failing to raise due process claims that the Commonwealth failed to disclose: (1) the 2010 indictment of former officer Williams, who authored reports about the 2009 shooting, which, Minnick argues, the Commonwealth used to consolidate the 2009 and 2012 shootings for trial; and (2) a full rental car agreement that, Minnick claims, would have established that Minnick's father, also named Anthony Minnick, had rented the red Cadillac involved in the 2012 shooting. *See id*. at 15-17. Minnick also claims that prior PCRA counsel were ineffective for failing to allege that trial counsel had a conflict of interest because Minnick's father confessed to trial counsel that he (Minnick's father) shot Pittard. *See id*. at 16-17. Further, Minnick contends that prior PCRA counsel were ineffective for failing to provide a witness certificate concerning trial

_____

[5] Minnick asserts that he sufficiently raised his allegations of prior PCRA counsel's claims in his amended Rule 1925(b) statement and claims that a court should not apply a rigorous pleading standard for raising such claims given the short time for formulating such claims in a Rule 1925(b). Even if we were to agree with Minnick, we note that proper briefing before this Court provides a petitioner with an opportunity to develop claims of PCRA counsel's ineffectiveness.

counsel's explanations for his actions and omissions when representing Minnick pursuant to 42 Pa.C.S.A. § 9545(d). **See id**. at 17-18.

Our review of the record compels the conclusion that there are no issues of material fact meriting a remand pursuant to **Bradley**. As to the 2010 indictment of former officer Williams, Minnick cannot demonstrate prejudice based on former officer Williams's indictment and conviction because there was other evidence corroborating officer Williams's report that Pittard initially identified "Ant Man" as the person who shot him in 2009, including the trial testimony of a third officer who responded to the scene, as well as Pittard's own testimony confirming that he identified "Ant Man" as the shooter in 2009, but later retracted the identification. **See** N.T., 12/10/13, at 61, 105. Thus, Minnick cannot establish that the outcome of the pretrial consolidation of the charges or his trial would have been different based on former officer Williams's indictment, and there are no material facts that prior PCRA counsel were ineffective in failing to address this alleged due process violation.[6]

As to Minnick's issue concerning a rental car agreement, the factual issue of whether Minnick's father rented the red Cadillac involved in the second shooting was raised at trial. **See** PCRA Court Opinion, 11/4/14, at 9; **see**

---

[6] Additionally, we note that the Commonwealth presented evidence at Minnick's trial that former officer Williams was in federal custody. **See** N.T., 12/11/13, at 138. Minnick, therefore, was aware of the claims related to former officer Williams prior to his conviction and could have raised a due process claim before his direct appeal. Thus, prior PCRA counsel cannot be ineffective for failing to pursue a waived claim. **See** 42 Pa.C.S.A. § 9544(b).

- 12 -

**also** N.T, 12/12/13, at 101 (indicating that Minnick's trial counsel cross-examined a detective about the detective's failure to obtain additional records to determine whether Minnick or his father rented the car). Minnick has not attached any portion of a rental car agreement or other information to confirm that his father rented the car nor has he established a basis for concluding that the Commonwealth possessed such information. Moreover, even if we were to accept Minnick's assertion that his father had rented the car, we discern no basis to conclude that fact was either material to a determination of Minnick's guilt or affected the fairness of the trial, where Pittard positively identified Minnick as the person who shot at him from the red Cadillac. **See** N.T., 12/10/13, at 141. Thus, we discern no basis to conclude that a remand is necessary for factual development of this claim.

Regarding Minnick's argument that his trial counsel was aware that Minnick's father confessed to shooting Pittard, Minnick does not specify whether his father perpetrated the first, second, or both shootings. Minnick posits, however, that he could have called his father to testify at trial, and if his father denied confessing to trial counsel, trial counsel would then have to testify as a witness to impeach him in violation of Rule of Professional Conduct 3.7, which prohibits an advocate from testifying as a fact witness. The record, however, establishes that the trial court conducted a colloquy of Minnick and asked whether he wished to call any additional defense witnesses. **See** N.T., 12/12/13, at 110. Minnick responded, "[N]o" and upon further questioning

- 13 -

by the trial court affirmed that he was "positive." **See** N.T., 12/12/13, at 110. Thus, Minnick's claim that he might have called his father as a witness not only contradicts the trial record, but is simply too speculative and hypothetical to merit any additional relief.[7]

Lastly, Minnick's contention that prior PCRA counsel were ineffective for failing to certify witnesses for a PCRA hearing merits no relief. Our review of the record establishes that the PCRA court did not dismiss any of Minnick's claims based on the absence of a certification, nor has Minnick shown a need for further development of his ineffectiveness of prior PCRA counsel's claims through additional witnesses or trial counsel's explanations of his trial strategy. Accordingly, Minnick cannot complain that prior PCRA counsel were ineffective for failing to attach a witness certification.

In sum, we conclude that Minnick has not demonstrated that prior PCRA counsel overlooked any claims that would require a remand for further development of the record. **See Bradley**, 261 A.3d at 401. Thus, no relief is due.

Order affirmed.

---

[7] We note that Minnick, in his *pro se* PCRA petition, alleged his trial counsel was ineffective failing to call his father as a witness. Minnick, however, did not allege that his father had taken responsibility for the shooting or shootings and he proffers no support for this alleged new fact.

- 14 -

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date:* _5/18/2023_